**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SLYCE ACQUISITION INC.,              ) | |
| ) | |
| ) | |
| *Plaintiff*,           ) | |
| ) | Case No. 6:19-cv-00257-ADA |
| v.                 ) | |
| ) | |
| SYTE – VISUAL CONCEPTION LTD.   ) | |
| AND KOHL'S CORPORATION,      ) | |
| ) | |
| *Defendants*.        ) | |

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(2), (3), AND (6)**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................... 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ....................................... 2

      A.    The Parties and Posture of the Case .......................................... 2

      B.    The '624 Patent .......................................................................... 3

            1.    *The '624 Patent Specification* .......................................... 3

            2.    *The '624 Patent Claims* ................................................... 5

III.  ARGUMENT ........................................................................................ 6

      A.    This Court Lacks Personal Jurisdiction Over Defendants ..................... 6

            1.    *Kohl's And Syte Are Not Subject To General Jurisdiction In Texas* ............... 8

            2.    *There is no Specific Jurisdiction Over Kohl's and Syte in Texas* ................... 9

            3.    *There is no Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)* ................. 10

      B.    Venue is Improper in the Western District of Texas ........................... 11

            1.    *Defendants Do Not Reside in the Western District of Texas* .......................... 11

            2.    *Defendants Do Not Have a Regular and Established Place of Business Here* 12

      C.    The '624 Patent Claims are Directed to Patent Ineligible Subject Matter ............ 12

            1.    *The '624 Patent Claims Cover An Abstract Idea* ........................................... 14

            2.    *The Claims Lack an Inventive Concept* ........................................................ 17

IV.   CONCLUSION .................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Affinity Labs of Tex. v. DIRECTV* LLC,
    838 F.3d 1253 (Fed. Cir. 2016) ........................................................................................ 9

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ........................................................................................ 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ..................................................................................................... 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 8

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009) ........................................................................................ 6

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*,
    687 F.3d 1266 (Fed. Cir. 2012) ...................................................................................... 27

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .................................................................................................. 10, 15

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ........................................................................................ 9

*Catalyst Medium Four, Inc. v. CardShark, LLC*,
    Case No. A-14-CA-1007-SS, 2015 U.S. Dist. LEXIS 38729 (W.D. Tex., Mar. 26, 2015) ... 6, 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ................................................................................ passim

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ................................................................................................. 12, 17

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ................................................................. 2, 21, 22, 26

*Elecs. for Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003) ................................................................................ 7, 15

*Freudensprung v. Offshore Technical Servs.*, Inc.,
    379 F.3d 327 (5th Cir. 2004) ...................................................................................... 15

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
    123 F.3d 1455 (Fed. Cir. 1997) ........................................................................................ 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011).................................................................................................... 12

*GT Nexus, Inc. v. INTTRA, Inc.*,
    No. C 11-02145-SBA, 2015 U.S. Dist. LEXIS 150579 (N.D. Cal. Nov. 5, 2015) .................. 23

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ........................................................................................ 21

*Interactive ToyBox, LLC v. Walt Disney Co.*,
    No. 1:17-CV-1137-RP, 2018 U.S. Dist. LEXIS 182304 (W.D. Tex. Oct. 24, 2018)............... 18

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................................. 1, 11

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................................ 8

*Mantissa Corp. v. Ondot Sys.*,
    2017 U.S. Dist. LEXIS 127370 (S.D. Tex. Aug. 10, 2017) ..................................................... 25

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) .......................................................................................... 15

*Monkton Ins. Servs. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) .......................................................................................... 12

*My Fabric Designs, Inc. v. F+W Media, Inc.*,
    Civil Action No. 3:17-CV-2112-L, 2018 U.S. Dist. LEXIS 34240 (N.D. Tex. Mar. 2, 2018) 13

*Nana Joes, LLC v. Microbiotic Health Foods, Inc.*, Civil Action No. 4:17-CV-00784,
    2018 U.S. Dist. LEXIS 24590 (E.D. Tex. Feb. 15, 2018) ....................................................... 14

*Network Architecture Innovations*,
    2017 U.S. Dist. LEXIS 59310 (E.D. Tex. Apr. 18, 2017)..................................................... 26

*NexLearn v. Allen Interactions, Inc.*,
    859 F.3d 1371 (Fed. Cir. 2017) ...................................................................................... 16

*Nuance Comm'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010) .................................................................................. 7, 15

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
    2016 U.S. Dist. LEXIS 61841 (E.D. Tex. May 10, 2016)..................................................... 9, 24

*Religious Tech. Ctr. v. Liebreich,*
339 F.3d 369 (5th Cir. 2003) ................................................................................................. 11

*Silicon Labs., Inc. v. Cresta Tech. Corp.,*
No. A-14-CA-318-SS, 2014 U.S. Dist. LEXIS 95711 (W.D. Tex. July 14, 2014) ................. 16

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.,*
873 F.3d 1364 (Fed. Cir. 2017) ............................................................................................ 22

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC,*
137 S. Ct. 1514 (2017) .......................................................................................................... 18

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.),*
823 F.3d 607 (Fed. Cir. 2016) ........................................................................................ 21, 26

*Two-Way Media Ltd v. Comcast Cable Commc'ns., LLC,*
874 F.3d 1329 (Fed. Cir. 2017) ............................................................................................ 20

*Ultramercial, Inc. v. Hulu, LLC,*
772 F.3d 709 (Fed. Cir. 2014) .............................................................................................. 19

*Uniloc USA, Inc. v. HTC Am., Inc.,*
2018 U.S. Dist. LEXIS 100737 (W.D. Wash., Jun. 15, 2018) ................................................ 8

*Voxathon LLC v. Alpine Elecs. of Am., Inc.,*
2016 U.S. Dist. LEXIS 6800 (E.D. Tex. Jan. 21, 2016) .......................................................... 9

<u>Statutes</u>

28 U.S.C. § 1400(b) ......................................................................................................... 10, 20

28 U.S.C. § 1406 ..................................................................................................................... 9

35 U.S.C. § 101 .............................................................................................................. passim

<u>Rules</u>

Fed. R. Civ. P. 12(b)(2) ..................................................................................... 1, 6, 13, 29

Fed. R. Civ. P. 12(b)(3) ..................................................................................... 1, 9, 13, 29

Fed. R. Civ. P. 12(b)(6) ............................................................................................... passim

Fed. R. Civ. P. 4(k)(2) ..................................................................................... 1, 19, 20

Tex. Civ. Prac. & Rem. C. §§ 17.001 .......................................................................... 8

## I.   INTRODUCTION

Defendants Syte – Visual Conception Ltd. ("Syte") and Kohl's Corporation ("Kohl's") (collectively, "Defendants") move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6) for lack of personal jurisdiction, improper venue, and for failure to state a claim upon which relief can be granted.[1]

Based on the properly pleaded facts of the complaint (and as confirmed by the Declaration of Syte's CEO, Ofer Fryman ("Fryman Dec.")), Slyce – which is neither incorporated nor headquartered in Texas – has not alleged facts, much less established, that either of Defendants has sufficient "minimum contacts with [Texas] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[2]

Kohl's is a Wisconsin corporation with its principal place of business at Menomonee Falls, Wisconsin. (D.I. 1 at ¶ 4).  Slyce's only allegation purporting to connect Kohl's to this forum is that Kohl's – a nationwide retailer – has two store locations in this district (Waco and Austin), and Kohl's sells (non-infringing) products through its website and its mobile app.  (D.I. 1 at ¶¶ 5-7). However, that is insufficient as a matter of law to confer jurisdiction over Kohl's in an action unrelated to those physical stores.

Syte is an Israel corporation having a principal place of business in Tel Aviv, Israel (D.I. 1 at ¶ 3), and the Complaint does not allege that it has any offices, real estate, employees, operations, or other property in Texas.  In addition, Fed. R. Civ. P. 4(k)(2) does not apply to Syte, because its

---

[1]      In email correspondence dated May 7 and 20, and July 1, 2019, Defendants' counsel agreed to accept service on behalf of Syte and Kohl's, and Plaintiff's counsel agreed to extend the deadline to answer or respond to July 2, 2019.

[2]      *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

only allegedly infringing actions – i.e., providing technology to Kohl's – *would* render it subject to personal jurisdiction in Wisconsin, where Kohl's is located.

Further, the Western District of Texas is an improper venue for both Defendants because neither of them resides in this District or has a regular and established place of business here. If the Court should find personal jurisdiction, it should nonetheless dismiss or transfer the case to the United States District Court for the Eastern District of Wisconsin.

If the court finds personal jurisdiction and venue proper, the complaint must be dismissed because as a matter of law, the patent at issue (U.S. Patent No. 9,152,624 ("the '624 Patent")) is not directed to patent-eligible subject matter under 35 U.S.C. § 101 and *Alice, infra*. The patent purports to cover a process that can be (and has been for generations) performed by mental steps and/or manually using pen and paper, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). The claims describe nothing more than matching items based on similarity, e.g., by color – the exact process a shop clerk would perform mentally when asked by a customer for a visually similar article of clothing. The remaining elements of the claims do not add enough to transform the claims into a patent-eligible application, but rather – by the patentee's *own admissions* – involve nothing more than "well-understood, routine, [and] conventional activities previously known to the industry". *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    The Parties and Posture of the Case

Plaintiff Slyce is a Delaware corporation, located in Philadelphia. (D.I. 1, at ¶1). Slyce filed the complaint in this action on April 11, 2019, less than one month after it acquired the '624 Patent. (Yonay Dec., Ex. 1).

Kohl's, a Wisconsin corporation with its principal place of business at Menomonee Falls, Wisconsin (D.I. 1 at ¶5), is a national chain that sells clothing, footwear, accessories, and beauty and home products. (D.I. 1 at ¶6). The complaint alleges that the Kohl's mobile app incorporates Syte's visual search technology. (D.I. 1 at ¶8; Fryman Dec. ¶7).

Syte is an Israel corporation having a principal place of business in Tel Aviv, Israel (D.I. 1 at ¶3; Fryman Dec. ¶2), and has a US subsidiary incorporated in Delaware, and located in New York (Fryman Dec. ¶3). Syte provides visual search navigation technology that is incorporated by retailers into online and mobile retail platforms, such as websites and mobile applications. (D.I. 1 at ¶4). Neither Syte nor its US subsidiary has any offices, employees, real estate, or other tangible property in Texas, nor have they purposefully directed their activities at residents of Texas. (Fryman Dec. ¶¶4-5). Syte has not made, used, offered for sale, sold, distributed, or otherwise solicited business in Texas with respect to the accused product at issue in this litigation. (Fryman Dec. ¶¶8-9).

**B.     The '624 Patent**

As described below, neither the specification nor the claims of the '624 Patent describe patent-eligible subject matter.

*1.     The '624 Patent Specification*

The '624 Patent purports to describe systems and methods to identify retail items such as "clothes, home furnishings, electronics" by comparing "attribute information associated with" those items, such as "color, pattern, material, size, price, manufacturer or brand, weight, any other suitable descriptive characteristic." '624 Patent, at col. 3, ll. 51-55. The '624 Patent expressly admits that it does not disclose any new technology, but rather explains that all the relevant steps can be performed using "well known" and "commonly used" methods:

3

The images of the items stored in the database, and the associated attribute information, may be *indexed using any known structure* (e.g., B-Trees, Sequential Indices, Cube Indices, or any other suitable indexing technique or combination of techniques). '624 Patent, at col. 3, ll. 60-65. (emphasis added.)

Fully automated image detection and analysis, which is important for implementation in a large item database environment, may be achieved using *known systems and methods* for detecting and storing descriptive information of an item automatically determined from a sample (e.g., image or physical specimen) of an item. For example, histograms of color usage may be used in conjunction with edge detection techniques to determine the color, number, and orientation of lines and curves in an item's pattern. Outline processing techniques may be used to automatically determine an item's overall shape. Sleeve length, collar type, and other item attribute information may also be determined *using known automatic image detection and analysis techniques*. '624 Patent, at col. 7, l. 58 – col. 8, l. 3. (emphasis added.)

The descriptive attribute information may be derived from information describing the item (e.g., from an item database), or the descriptive attribute information may be derived from a sample (e.g., image or specimen) of a desired item using, for example, *known automatic image detection and analysis technologies and techniques*. '624 Patent, at col. 13, ll. 2-7. (emphasis added.)

As best understood, the patentee's only self-described distinguishing characteristic was that in prior art systems, "much of the searching and navigation in an online retail environment involves entering text-based criteria or selecting text-based options." '624 Patent, at col. 1, ll. 58-64. That is, the prior art already performed the same functionality:

"*Publicly known* software browsing applications, such as web browsers (e.g., Microsoft's Internet Explorer, Netscape Navigator, etc.), have been developed to facilitate the navigation of vast amounts of content using a combination of selectable text and images. For example, in an online retail environment using a web-based browsing application, a web browser interface may be used to allow a user to select images of retail items in order to find more content related to the selected item." '624 Patent, at col. 1, ll. 51-59. (emphasis added, describing the prior art)

"In addition to web-based browsing applications that present selectable images of retail items, and that allow users to access

4

textual database content related to a selected image, systems and methods are _known_ for storing and indexing image-based content in a database. For example various index structures, such as B-Trees, Sequential Indices, Cube Indices, etc. are _known and commonly used_ to store, index, and retrieve image-based content in multimedia databases. Technologies and techniques are also _known for automatically detecting and analyzing image data_ from an external source and for automatically synthesizing, generating, compressing, editing and enhancing stored image data." '624 Patent, at col. 2, ll. 17-28. (emphasis added, describing the prior art)

That is, the '624 Patent does not describe any enhanced outcomes, since these prior art systems produced the same result, namely "users … ultimately be[ing] presented with an image of an item once the item is located." '624 Patent, at Col. 1, ll. 61-63. Therefore, the only purported invention is simply to perform what is already well known but in a way that involves less text "to facilitate a user's navigation of stored content". '624 Patent, at col. 1, ll. 48-50. This is not patentable.

2.    *The '624 Patent Claims*

The '624 Patent contains 44 claims, of which claims 1, 12, 23, and 34 are independent. Claim 1 (discussed in greater detail below) is the only asserted claim, and recites a method for allowing a user to browse images. The claimed method steps are:

- storing images of items;

- analyzing a first image of a first item to determine its attributes;

- storing the attributes;

- receiving a user selection of the (stored) first image;

- identifying distinctions between the first item and a second item based on categories;

- determining that the second item is similar to the first item if the measure of distinction satisfies a criterion; and

- displaying the second image of the second item.

As discussed below, identifying an item based on attributes of another item is abstract and not patent-eligible.

## III.   ARGUMENT

The Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), (3), and/or (6) for lack of personal jurisdiction, improper venue, and for failure to state a claim because the asserted claims of U.S. Patent No. 9,152,624 ("the '624 Patent") are invalid under 35 U.S.C. § 101 for claiming a conventional process that has been performed mentally and/or manually for generations.

### A.   This Court Lacks Personal Jurisdiction Over Defendants

The Court is familiar with the standard for motions under Fed. R. Civ. P. 12(b)(6).  Briefly, the Court must assume that facts in the complaint are true; however, conclusory arguments need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); see also *Uniloc USA, Inc. v. HTC Am., Inc.,* 2018 U.S. Dist. LEXIS 100737 at *10-*11 and *34-*35 (W.D. Wash., Jun. 15, 2018).

For cases brought under the patent laws, the court applies Federal Circuit law to determine personal jurisdiction.  See, e.g., *Catalyst Medium Four, Inc. v. CardShark, LLC*, Case No. A-14-CA-1007-SS, 2015 U.S. Dist. LEXIS 38729 at *7 (W.D. Tex., Mar. 26, 2015) (granting motion to dismiss for lack of personal jurisdiction) (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)).

On a motion to dismiss, "the district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Catalyst Medium Four*, 2015 U.S. Dist. LEXIS 38729 at *7, quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). The court may base its decision on affidavits and other written materials, in which case, a plaintiff must make a *prima facie* showing the defendant is subject to personal jurisdiction. *Catalyst Medium Four*, 2015 U.S. Dist. LEXIS 38729 at *8 (citing *Elecs. for Imaging*, 340 F.3d at 1349; *Nuance Comm'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)).

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)). Because the Texas long-arm statute has been interpreted to extend to the limit of due process, the two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); see Tex. Civ. Prac. & Rem. C. §§ 17.001, *et seq.*

"The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum state.'" *Catalyst at id.*, quoting *Burger King* 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "A defendant's 'minimum contacts' may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state". *Interactive Life Forms, LLC v. Weng*, No. A-12-CA-1182-SS, 2013 U.S. Dist. LEXIS 193772, at *4 (W.D. Tex. Apr. 8, 2013).

1.      *Kohl's And Syte Are Not Subject To General Jurisdiction In Texas*

General jurisdiction over out-of-state corporations may only be found "when their affiliations with the State are so 'continuous and systematic' as to render them *essentially at home* in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (emphasis added). The Supreme Court later clarified that "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-1 (2014) (rejecting as "unacceptably grasping" the position that general jurisdiction exists in *every* state in which a corporation "engages in a substantial, continuous, and systematic course of business.") Rather, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State. *Id.* (quoting *Goodyear*, 131 S. Ct. at 2851). As the Fifth Circuit observed in the aftermath of *Goodyear* and *Daimler*, "[i]t is, therefore, *incredibly difficult* to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (emphasis added).

Syte is an Israel corporation having a principal place of business in Tel Aviv, Israel. (D.I. 1 at ¶ 3). Kohl's is a Wisconsin corporation with its principal place of business at Menomonee Falls, Wisconsin. (D.I. 1 at ¶ 4). That ends the general jurisdiction analysis. Accordingly, the only possible basis for personal jurisdiction against either of Defendants is specific jurisdiction, but as discussed below, this too is lacking.

2.      *There is no Specific Jurisdiction Over Kohl's and Syte in Texas*

The Federal Circuit applies a three-prong test to determine whether specific jurisdiction exists against a defendant: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance*, 626 F.3d at 1231 (citation omitted).[3]

The focus of the specific jurisdiction inquiry is on "the relationship between the defendant, the forum, and the litigation." *Freudensprung v. Offshore Technical Servs.*, Inc., 379 F.3d 327, 343 (5th Cir. 2004) (quoting *Burger King*, 471 U.S. at 474). "Random, fortuitous, or attenuated contacts" do not satisfy the minimum contacts requirement. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).

Other than boilerplate pleading (D.I. 1, at ¶5), the Complaint contains insufficient facts connecting either of the Defendants, Texas, and the alleged infringement.

Against Kohl's, the Complaint alleges that (a) Kohl's sells products via its website and its mobile app (D.I. 1 at ¶6); (b) Kohl's offers its mobile app through the Apple Store and Google Play Store (D.I. 1 at ¶7); and (c) Kohl's has retail locations in Waco and Austin, Texas (D.I. 1 at ¶14).   That is, the infringement allegations relate to the mobile app, which are *admittedly* distributed through Apple and Google in California (D.I. 1, at ¶7).   There is no allegation Kohl's purposefully directed the mobile app at Texas residents.   And there is no allegation that the infringement arises particularly out of or relates to Kohl's Waco or Austin stores.

---

[3]      The plaintiff has the burden to prove the first two prongs; if that burden has been met, the burden shifts to the defendant to prove that exercising jurisdiction would be unreasonable and unfair. *Elecs. for Imaging*, 340 F.3d at 1350.   Although no facts are pleaded to support the first two prongs, Syte reserves the right to further argue that jurisdiction is unreasonable and unfair, based on Slyce's response to this motion.

This District has previously rejected similar claims of specific jurisdiction over "national retail stores ... [b]ecause the patentee's theory 'would allow the exercise of personal jurisdiction in every state, not just Texas.'" *Silicon Labs., Inc. v. Cresta Tech. Corp.*, No. A-14-CA-318-SS, 2014 U.S. Dist. LEXIS 95711, at *10-12 (W.D. Tex. July 14, 2014). While Kohl's website is "'presumably directed at the entire world,' ... that does not mean [Kohl's] may be haled into any federal court in the United States". *Interactive Life Forms*, 2013 U.S. Dist. LEXIS 193772, at *14. Especially, as here, where "[t]he website is not Texas specific, offers no special deals for Texas residents, and the products were not marketed specifically to Texans". *Id.* at 15; *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017) ("the difficulty with that specific jurisdiction theory was that [Defendant's] website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country").

There are even fewer allegations in the Complaint purporting to connect Syte to Texas. The *only* specific allegation against Syte is that it provided the technology to Kohl's mobile app (D.I. 1, at ¶8), but this fails for the same reasons discussed above, as Syte is even further removed from Kohl's two stores in this District. There is no allegation that Syte purposefully directed activities at Texas residents, or that Slyce's patent infringement claim arises out of or relates to Syte's Texas-directed activities, and the Fryman Declaration establishes that this cannot be alleged. Accordingly, there is no specific jurisdiction over either of Defendants.

### 3.   There is no Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

Presumably aware that it has failed to allege sufficient facts to support personal jurisdiction against Syte,[4] Slyce attempts to support personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which

---

[4]      This allegation is clearly directed at Syte, as Kohl's is obviously subject to general jurisdiction in Wisconsin. (D.I. 1 at ¶ 5).

provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws".

However, based on the allegations in the complaint itself, Syte *would* be subject to personal jurisdiction in Wisconsin because (as Slyce alleged) Kohl's "purchases or licenses certain visual search navigation technology from Syte that is incorporated into the Kohl's mobile app." (D.I. 1 at ¶8; see also, ¶29; Fryman Dec., ¶7). Applying the Federal Circuit's three-prong test for specific jurisdiction: (1) by contracting with Kohl's, Syte purposefully directed activities at Wisconsin; (2) Slyce's claim arises out of or relates to that commercial activity; and (3) assertion of personal jurisdiction against Syte in Wisconsin in connection with the Kohl's mobile app would be reasonable and fair. *Nuance*, 626 F.3d at 1231. Thus, Syte *would* be subject to personal jurisdiction in Wisconsin for the alleged patent infringement, and accordingly, Fed. R. Civ. P. 4(k)(2) does not apply.

### B.   Venue is Improper in the Western District of Texas

In patent cases, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). If the court finds that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Proper venue for Slyce's complaint would be Wisconsin.

### 1.   *Defendants Do Not Reside in the Western District of Texas*

As discussed above, neither of the Defendants is incorporated or has a principal place of business in Texas, and, thus, neither of the Defendants reside in any of the judicial districts of Texas, let alone the Western District of Texas. *TC Heartland LLC v. Kraft Foods Grp. Brands*

11

*LLC*, 137 S. Ct. 1514, 1521 (2017). ("[a]s applied to domestic corporations, 'reside[nce]' in §1400(b) refers only to the State of incorporation").

      2.    *Defendants Do Not Have a Regular and Established Place of Business Here*

A regular and established place of business under the second prong of §1400(b) requires that: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Interactive ToyBox, LLC v. Walt Disney Co.*, No. 1:17-CV-1137-RP, 2018 U.S. Dist. LEXIS 182304, at *6 (W.D. Tex. Oct. 24, 2018) ("This standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision.")

As discussed above, there is no specific jurisdiction over Kohl's, as there is nothing connecting Kohl's, the patent infringement, and Texas in particular. *A fortiori*, since there are no minimum contacts, venue cannot be proper here. In any event, Texas cannot be "the place of the defendant" merely because a nationwide retailer has two stores here.

There is also no allegation that Syte has offices in Texas, owns real estate or tangible property in the State, or conducts any other operations here. (Fryman Dec. ¶¶8-9). Thus, Syte does not have a "regular and established place of business" in any judicial district of Texas, let alone the Western District of Texas. Again, venue in this District is improper, at least because Syte is not subject to personal jurisdiction in this District (or elsewhere in Texas).

**C.    The '624 Patent Claims are Directed to Patent Ineligible Subject Matter**

Title 35 U.S.C. § 101 states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

Because patent invalidity under Section 101 is a matter of law, a challenge is appropriate in a Rule 12(b)(6) motion. *See e.g., Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d

1266, 1269-72 (Fed. Cir. 2016) (affirming grant of judgment on pleadings for lack of patentable subject matter); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (same); *Affinity Labs of Tex. v. DIRECTV LLC*, 838 F.3d 1253 (Fed. Cir. 2016) (granting motion to dismiss for lack of patentable subject matter); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d 1343 (Fed. Cir. 2014) (same); *Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*, 2016 U.S. Dist. LEXIS 61841, at *15-16 (E.D. Tex. May 10, 2016); *Voxathon LLC v. Alpine Elecs. of Am., Inc.*, 2016 U.S. Dist. LEXIS 6800, at *2 (E.D. Tex. Jan. 21, 2016) (Gilstrap, J.) (granting Rule 12(b)(6) motions, holding patent invalid under § 101).

In *Alice*, the Court set out a two-step test for "distinguishing patents that claim … abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355 (citing *Mayo*, 132 S.Ct. 1289). Subject matter eligibility under § 101 serves as an important check on the scope of the patent monopoly by preventing patentees from capturing a "building block[] of human ingenuity," "a method of organizing human activity," an "idea of itself," "an algorithm," or a similar foundational concept. *Id*. at 2354-57. The doctrine exists to prevent patent law from "inhibit[ing] further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id*. at 2354.

The first step of *Alice* requires a Court to determine if the claims are directed to, *inter alia*, a "patent-ineligible concept". 134 S. Ct. at 2355; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental practice long prevalent in our system.'" Quoting *Alice*, 134 S. Ct. at 2356).

If the idea is abstract, a patent may be valid under second step of *Alice* if the Court determines that the claim "transform[s] the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355 ("[w]e have described step two of this analysis as a search for an 'inventive concept.'")

### 1. The '624 Patent Claims Cover An Abstract Idea

The first step in an *Alice* inquiry is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016) ("[w]e contrasted claims 'directed to an improvement in the functioning of a computer' with claims 'simply adding conventional computer components to well-known business practices,' or claims reciting 'use of an abstract mathematical formula on any general purpose computer,' or 'a purely conventional computer implementation of a mathematical formula,' or 'generalized steps to be performed on a computer using conventional computer activity…'").

Among other hallmarks of abstract ideas is that they may be performed mentally, by a mathematical algorithm, and/or pen and paper. *Elec. Power Grp.*, 830 F.3d at 1356 (holding "a process of gathering and analyzing information of a specified content, then displaying the results", without "any particular assertedly inventive technology for performing those functions" is "directed to an abstract idea"); *In re TLI*, 823 F.3d at 609 ("classifying and storing digital images in an organized manner" is an abstract idea); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("creating an index and using that index to search for and retrieve data" is an abstract idea); *Content Extraction*, 776 F.3d at 1347 ("1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" is an

abstract idea); *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1372 (Fed. Cir. 2017) ("collection, storage, and recognition of data").

Here, similar to the ineligible claims in *Elec. Power Group*:

> the claims are clearly focused on the combination of those abstract-idea processes". The advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions. They are therefore directed to an abstract idea. *Elec. Power Grp.*, 830 F.3d at 1354

In this case, claim 1 is representative of all claims, as there is nothing in any of independent claims 12, 23, and 34, or any of the dependent claims that would changes the result. *Two-Way Media Ltd v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("[T]he district court correctly determined that the patents were ineligible under § 101 on the basis of the representative claims..."); *Content Extraction*, 776 F.3d at 1348. However, Syte reserves the right to address specific dependent claims in the event Slyces argues patent-eligibility based on them.

Claim 1 simply describes equivalent mental processes for storing, classifying, and indexing items, then using the index to search, compare, and retrieve items, all of which have been held to be abstract ideas.[5] As demonstrated by the below table, claim 1 describes the process a shop clerk would undertake in looking for pants having the same color (or style, etc.) as a particular shirt.

| Claim 1 | Convention Mental Process |
|---|---|
| 1. A method for allowing a user of a browsing application to navigate image-based content using a graphical user interface, the method comprising: | Preamble is not limiting, but in any event, describes conventional components. |
| storing a plurality of images, wherein each image depicts an item; | The store receives and stores an inventory of clothing items. |

---

[5]    Independent claims 12, 23, and 34, and their dependent claims, are essentially the same as claims 1-11, and cover the same idea.

| Claim 1 | Convention Mental Process |
|---------|---------------------------|
| analyzing a first image of the plurality of images to detect attribute information associated with a first item depicted in the first image, wherein the attribute information comprises a plurality of categories, including a color category; | When new items are received at the store, the shop clerk opens boxes and identifies attributes of the clothing items (e.g., clothing item, style, color, price, etc.). |
| storing the attribute information; | Clerk remembers or makes a note of items and their attributes. |
| receiving a user selection, from a user, of the first image depicting the first item; | Customer comes into store, sees a first item (e.g., a shirt) on the clothing rack, and asks for another item having similar attributes (e.g., pants of a similar color or style). |
| calculating a measure of distinction between the first item and a second item based on the plurality of categories, wherein the measure of distinction represents an alignment of categories between the first and second items; | Clerk compares the selected item to items in the inventory based on the attributes (e.g., color or style). |
| determining the second item to be similar to the first item if the measure of distinction satisfies a criterion; and | Clerk determines that particular second item (e.g., a pair of pants) is the closest match to the item (e.g., shirt) identified by the customer based on attributes (e.g., based on color or style). |
| displaying a second image of the plurality of images depicting the second item. | Clerk brings second item (e.g., pants) out of the inventory to show the customer. |

Thus, the claims are "not directed to a specific improvement to computer functionality", but, "[r]ather, they are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution". *In re TLI*, 823 F.3d at 612.

While independent claims 12, 23, and 34 recite generic hardware, such "a storage device", "a processor", and "a display device", "[c]ourts must ignore generic recitation of hardware at step one, when the claimed hardware essentially performs a method"; *GT Nexus, Inc. v. INTTRA, Inc.*,

No. C 11-02145-SBA, 2015 U.S. Dist. LEXIS 150579, at *15 (N.D. Cal. Nov. 5, 2015); and "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as … a computer". *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015); *Alice*, 134 S. Ct. at 2358. Even if the generic hardware of claims 12, 23, and 34 could be considered at step one, "[t]he specification does not describe a new [storage device], a new [processor with a display device], or a new physical combination of the two". *In re TLI*, 823 F.3d at 62. "The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms". *Id*. Accordingly, the asserted claims are directed to an abstract idea.

### 2.   The Claims Lack an Inventive Concept

The second step of *Alice*, searching for an inventive concept, requires the Court to:

> "…consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim into a patent-eligible application.' The Court described that step as 'a search for an inventive concept— i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Pres. Wellness*, 2016 U.S. Dist. LEXIS 61841  at *15-*16 (quoting *Alice*, 134 S. Ct. at 2355); *see, e.g., Mantissa Corp. v. Ondot Sys.*, 2017 U.S. Dist. LEXIS 127370, at *39-*40 (S.D. Tex. Aug. 10, 2017):

> "It is well-established that 'an inventive concept must be evident in the claims.' Moreover, the inventive concept 'must be *significantly* more than the abstract idea itself.' … The 'mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activities' previously known to the industry.'" (Internal citations omitted; emphasis in original).

Here, claim 1 of the '624 Patent does not recite any "concrete, tangible components" at all. While claim 23 recites a storage device, a processor, and a display device, the '624 Patent explains that the processor and display device can be "any computing device that has a display device" and the storage device is "any … suitable storage device". '624 Patent at col. 4, ll. 30-33; and col. 5, ll. 25-49. Claim 12 recites classic means-plus-function elements for each limitation and the means for performing these limitations is the same generic computer and storage device of claim 23. While the preamble of claim 34 recites a "non-transitory machine-readable storage medium", the storage medium is not discussed in the '624 Patent or limited in any way by that claim, and, thus, could be any generic non-transitory machine-readable storage medium.

Regardless, it is well-settled that "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea". *In re TLI*, 823 F.3d at 613. Further, "[m]ere recitation of a generic computer cannot transform a patent-ineligible idea into a patent-eligible invention", rather, "it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry". *Content Extraction*, 776 F.3d at 1347-48 (Fed. Cir. 2014) ("[t]here is no 'inventive concept' in [the] use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry", such as, data collection, recognition, and storage"); *Intellectual Ventures I LLC*, 792 F.3d at 1367-68 (a "database" and "a communication medium" "are all generic computer elements"); *In re TLI*, 823 F.3d at 613 ( "the server fails to add an inventive concept because it is simply a generic computer"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (claims did not contain an "inventive concept" where "the claims recite both a generic computer element—a processor—and a series of generic computer "components" that merely restate their individual functions); *Elec. Power Grp.*, 830 F.3d at 1355

(holding "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

Moreover, an "age-old practice" cannot be patented simply because it is applied to a new platform. *Network Architecture Innovations LLC v. CC Network Inc*, 2017 U.S. Dist. LEXIS 59310, at *10 (E.D. Tex. Apr. 18, 2017). "Nor, in addressing the second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept". *Intellectual Ventures I LLC*, 792 F.3d at 1367. The "use of a computer in an otherwise patent ineligible process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes", rather "a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not". *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)

As discussed above, claim 1 recites an age-old practice of looking for a similar article of clothing based on the clothing's attributes. Simply adding generic elements, such as a "storage device"; a "processor"; and a "display device", to the other independent claims does not help, especially when, the '624 Patent itself even explains that all the claimed steps can be performed using "well known" and "commonly used" web browsers and index structures, such as Internet Explorer, on "any computing device that has a display device". '624 Patent, at col. 1, ll. 51-59; col. 2, ll. 17-28; col. 3, ll. 60-65; col. 4, ll. 30-33; col. 7, l. 58 – col. 8, l. 3; and col. 13, ll. 2-7.

Even ignoring the fact that the steps performed in all the independent claims are an age-old practice that has been performed in the minds of salespeople for generations, the '624 Patent explains that it was also already known to apply this age-old practice "in an online retail

environment using a web-based browsing application ... to allow a user to select images of retail items in order to find more content related to the selected item" and "ultimately be presented with an image of an item once the item is located". '624 Patent, at Col. 1, ll. 61-63.

The supposedly distinguishing characteristic (if any) was that, in prior art systems, "much of the searching and navigation in an online retail environment involves entering text-based criteria or selecting text-based options". '624 Patent, at col. 1, ll. 58-64. In other words, the purported invention is simply to perform what is already well known but in a way that has "as little text as possible to facilitate a user's navigation of stored content". However, that is not actually a distinguishing characteristic when compared to the brick and mortar analog, discussed above, which does not involve any entering of text-based criteria or selection of text-based option.

Likewise, the dependent claims do not add any technical innovation. Claim 2 states the attribute information is "derived from a sample of a desired item." Claim 3 requires "generating an image based on the sample." Claim 4 requires "storing the generated image." Claim 5 adds "a proximity search using the stored attribute information." Claim 6 requires "providing the user with an opportunity to further refine the proximity search." Claim 7 recites "allowing the user to indicate interest in the first image..." Claim 8 recites "allowing the user to indicate interest in the first image by selecting a group of stored images." Claim 9 adds that "the one or more groups of stored images are at least partially overlaid on a third image." Claim 10 allows the user to "create an image based on desired attribute information." Claim 11 allows the user "to purchase an item associated with the second image."

Accordingly, none of the '624 Patent claims recite any elements that individually or as an ordered combination transform the abstract idea of looking for a similar item based on the item's attributes into a patent-eligible application of that idea.

IV.   **CONCLUSION**

For the foregoing reasons, this court lacks personal jurisdiction, and venue is improper in the Western District of Texas, and the Complaint should be dismissed or transferred to the Eastern District of Wisconsin.  In the alternative, the '624 patent is invalid as being directed to an abstract idea under Section 101.

Respectfully submitted,

By: /s/ *David N. Deaconson*
David N. Deaconson
Texas Bar Card No. 05673400

PAKIS, GIOTES, PAGE & BURLESON, P.C.
P.O. Box 58
Waco, Texas  76703-0058
Tel: (254) 297-7300
Fax: (254) 297-7301
deaconson@pakislaw.com

Guy Yonay (*pro hac vice* pending)
PEARL COHEN ZEDEK LATZER BARATZ LLP
1500 Broadway, 12th Floor
New York, NY 10036
Tel: (646) 878-0800
Fax: (646) 878-0801
gyonay@pearlcohen.com

*Attorneys for Defendants*
  *Syte – Visual Conception Ltd. and*
  *Kohl's Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1) on this the 2nd day of July, 2019.

*/s/ David N. Deaconson*
David N. Deaconson
Texas Bar Card No. 05673400

PAKIS, GIOTES, PAGE & BURLESON, P.C.
P.O. Box 58
Waco, Texas 76703-0058
Tel: (254) 297-7300
Fax: (254) 297-7301
deaconson@pakislaw.com

*Attorneys for Defendants*
 *Syte – Visual Conception Ltd. and*
 *Kohl's Corporation*