# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **SLYCE ACQUISITION INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: 6:19-cv-257-ADA** |
| | § | |
| **SYTE – VISUAL CONCEPTION LTD.** | § | **JURY TRIAL DEMANDED** |
| **AND KOHL'S CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...........................................................................................1

II.   RELEVANT FACTUAL BACKGROUND..................................................4

    A.    Personal Jurisdiction .............................................................................4

          1.    Kohl's..........................................................................................4

          2.    Syte .............................................................................................6

III.  ARGUMENT................................................................................................7

    A.    This Court May Exercise Personal Jurisdiction Over Both Defendants In This Forum...............................................................................................7

          1.    Kohl's is subject to personal jurisdiction in this forum .................................8

          2.    Syte is also subject to personal jurisdiction in this forum ...........................12

          3.    At the very least, jurisdictional discovery is appropriate as to both Defendants ...............................................................................13

    B.    Venue is Proper In This District As To Both Defendants ....................................14

          1.    Venue for Kohl's is Proper Under 28 U.S.C. § 1400(b).............................14

          2.    Venue for Syte is Proper Under 28 U.S.C. § 1391(c)(3) .............................16

    C.    Claim 1 of the '624 Patent is Directed to Patent Eligible Subject Matter .............17

          1.    The '624 Patent Was Examined and Issued After the Supreme Court's *Alice* Decision ...................................................................19

          2.    *Alice* - Step 1 - Claim 1 of the '624 Patent is Directed to an Improved Method of Visual Computing and Visual Search .........................................20

               a.    Claim 1 Is Necessarily Rooted In Computer Technology To Solve A Problem Specifically Arising In The Realm Of Computers ...........21

          3.    *Alice* – Step Two - Defendants Have Failed to Establish the Lack of an Inventive Concept ...................................................................22

IV.  CONCLUSION...........................................................................................24

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..................................................................................17, 19

*AdvanceMe, Inc. v. Rapidpay LLC*,
  450 F. Supp. 2d 669 (E.D. Tex. 2006)..........................................................................9, 10

*Agis Software Dev. LLC v. HTC Corp.*,
  No. 2:17-CV-00514-JRG, 2018 U.S. Dist. LEXIS 167029 (E.D. Tex. Sept.
  18, 2018) ......................................................................................................................11, 12

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ................................................................................... *passim*

*Andra Grp., LP v. Bareweb, Inc.*,
  No. 4:17-CV-00815, 2018 U.S. Dist. LEXIS 97378 (E.D. Tex. June 11,
  2018) ................................................................................................................................9, 10

*ATEN Intern. Co. Ltd. v. Emine Technology Co., Ltd.*,
  261 F.R.D. 112 (E.D. Tex. June 25, 2009) ......................................................................12

*Autobytel, Inc. v. Insweb Corp.*,
  No. 2:07-cv-00524, 2009 U.S. Dist. LEXIS 31287 (E.D. Tex. Mar. 31,
  2009) ....................................................................................................................................7

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009).........................................................................................7

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008).......................................................................................10

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)....................................................................................22, 23

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)....................................................................................17, 18

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)..................................................................................7, 8, 10

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*,
  No. 2:17-CV-00418, 2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sept. 6,
  2018) ........................................................................................................................ *passim*

*Celgard, LLC v. SK Innovation Co., Ltd.*,
  792 F.3d 1373 (Fed. Cir. 2015)................................................................7

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  2018-1817, 2018-1819, 2018-1820, 2018-1821, 2018-1822, 2018-1823,
  2018-1824, 2018-1825, 2018-1826, 2018-2178, 2018-2179, 2018-2180,
  2018-2181, 2018-2183, 2018-2184, 2019 U.S. App. LEXIS 18853 (Fed.
  Cir. June 25, 2019)......................................................................19

*Commil USA, LLC v. Cisco Systems, Inc.*,
  135 S. Ct. 1920 (2015)..................................................................17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)........................................................18

*Cray. Interactive ToyBox, LLC v. Walt Disney Co.*,
  2018 U.S. Dist. LEXIS 182304 (W.D. Tex. Oct. 28, 2018) ............................15

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017)...........................................14, 15, 16

*Data Engine Tech. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018)..........................................................18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)........................................................21

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016).....................................................17, 18

*Godo Kaisha Ip Bridge 1 v. Broadcom Ltd.*,
  No. 2:16-CV-0134, 2017 U.S. Dist. LEXIS 45416 (E.D. Tex. March 1,
  2018) .......................................................................................9, 10

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
  564 U.S. 915 (2011)......................................................................8

*In re HTC Corp.*,
  889 F.3d 1349 (Fed. Cir. 2018)........................................................16

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
  No. 5:08- cv-00026, 2009 U.S. Dist. LEXIS 3476 (E.D. Tex. Mar. 26,
  2009) .......................................................................................8

*IDQ Operating, Inc. v. Aero. Communs. Holdings Co.*,
  No. 6:15-CV-7812016, U.S. Dist. LEXIS 130441 (E.D. Tex. June 10,
  2016) ....................................................................................11, 12

*Interactive Life Forms, LLC v. Weng*,
No. A-12-CA-1182, 2013 U.S. Dist. LEXIS 193772 (W.D. Tex. April 8, 2013) ..................................................................................................................10

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)..................................................................18, 20, 22

*Nexlearn v. Allen Interactions, Inc.*,
859 F.3d. 1371 (Fed. Cir. 2017)..............................................................................10

*Seoul Semiconductor Co. v. Nichia Corp.*,
2008 U.S. Dist. LEXIS 70391 (E.D. Tex. Sept. 10, 2008) ...........................9, 10

*Seven Networks, LLC v. Google LLC*,
315 F. Supp. 3d 933 (E.D. Tex. 2018) ................................................14, 15, 16

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) .............................................15, 16

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*,
758 F. Supp. 2d 366 (N.D. Tex. 2010) ...................................................10, 13

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017)..............................................................................21

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*,
395 F.3d 1275 (Fed. Cir. 2005)..............................................................................13

*Versata Software, Inc. v. Internet Brands, Inc.*,
No. 2:08-CV-313, 2009 U.S. Dist. LEXIS 90935 (E.D. Tex. Sept. 30, 2009) ..................................................................................................................9, 10

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
No. 2:17-CV-00456, 2018 U.S. Dist. LEXIS 183553 (E.D. Tex. Oct. 26, 2018) ..................................................................................................................16, 17

**Statutes**

28 U.S.C. § 1391(c)(3)................................................................................................2, 16

28 U.S.C. § 1400(b) ...............................................................................2, 14, 15, 16

35 U.S.C. §101 .................................................................................................2, 19

**Other Authorities**

84 FED. REG. 4 (Jan. 7, 2019) ...............................................................................19

iv

FED. R. CIV. P. 12(b)(6) ..........................................................................................................2, 19

Plaintiff Slyce Acquisition Inc. ("Slyce") hereby submits its opposition to Defendants' Syte - Visual Conception Ltd. ("Syte") and Kohl's corporation ("Kohl's") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Patent Ineligible Subject Matter (Dkt. No. 6) (hereinafter "Def. Mot."). In support thereof, Slyce would respectfully show the Court as follows:

## I.     <u>INTRODUCTION</u>

Defendants moved to dismiss Slyce's Complaint for (1) lack of personal jurisdiction, (2) improper venue, and (3) failure to state a claim because the patent at issue in this case is not directed to patent-eligible subject matter. As demonstrated herein, Defendants' Motion is meritless and should be denied in its entirety.

With respect to personal jurisdiction, there can be no reasonable dispute that Kohl's is properly subject to this Court's reach. It has at least eighty-four retail stores in this state (making Texas its second largest market nationwide), and at least twenty in this District alone. Its largest online fulfillment center in the United States in also in Texas. To supplement that store presence, Kohl's provides a highly interactive commercial website and mobile application (the subject of this suit), both of which are configured to allow customers to shop specific stores in this forum, and to have products delivered directly to stores or homes in this forum. Critically, Kohl's acknowledges its mobile application and physical stores complement each other, and that the availability of both in this forum are intended to increase sales. By establishing a substantial store presence in this forum and making infringing software available to customers to facilitate increased sales in this forum, there can be no reasonable dispute that Kohl's has "directed" its activities at this forum sufficient to confer jurisdiction. At the very least, Kohl's should have known (or at least reasonably foreseen) that potential customers would use its infringing application to purchase products in this forum. Any contention that Kohl's is not subject to jurisdiction in view of the foregoing is simply untenable.

With respect to Syte, it specifically targets large national retailers like Kohl's to sell its infringing software and is undoubtedly aware that Kohl's represents a large distribution channel that has a substantial presence in this State. By contracting with Kohl's to use its infringing software, Syte also should have known (or at least reasonably foreseen) that potential customers would use its infringing software to purchase products in this forum. This is sufficient to confer jurisdiction here.[1]

Defendants' contentions with respect improper venue are also meritless. As to Kohl's, it has at least twenty "regular and established" places of business in this District, which is more than sufficient to satisfy the requirements of Section 1400(b). With respect to Syte, it is a foreign corporation, and thus the requirements of Section 1400(b) do not apply. Instead, foreign corporations like Syte can be sued for patent infringement pursuant to Section 1391 *in any district* in the United States, including this one.

Defendants' motion to dismiss under 35 U.S.C. §101 should also be denied because it fails to meet the clear and convincing evidentiary standard applied to all validity challenges. Defendants motion further fails to address the claims of U.S. Patent No. 9,152,624 ("the '624 patent") as a whole, or as an ordered combination of steps, when performing their analysis. Claim 1 of the '624 patent is further drawn to a specific improvement to the visual computing and visual search related arts, is necessarily rooted in computer technology to overcome a computer-specific problem, and, therefore, cannot be drawn to an abstract idea. Defendants' motion to dismiss should at least be dismissed because factual disputes exist sufficient to preclude dismissal for patent ineligible subject matter under Rule 12(b)(6).

---

[1] As demonstrated herein, Slyce has more than met its *prima facie* burden of demonstrating that both Defendants are subject to personal jurisdiction in this forum. To the extent the Court disagrees, jurisdictional discovery is appropriate to address the factual issues raised herein.

Prior to the '624 patent, an Internet user could conduct a search for items on a webpage by using certain textual descriptors. The website would maintain a database of images that were each tagged with one or more text-based labels. For example, if one wanted to search for red coffee mugs, the user would type in the words "red, coffee, and/or mug." If any of the images on the website contained those text labels, then those images may be displayed to the user. If the images did not contain those labels, or if there was an error in typing in the search terms, then the search would not yield any results (or poor results). Similarly, if the user of the browser did not use the correct textual search terms, the search would yield no results.

The '624 patent recites a method and system that allows an Internet user to simply upload a picture image of what he/she would like to search for. In accordance with the '624 patent and the red coffee mug example above (and as shown in the Complaint (Dkt. No. 1)), a picture image of a red coffee mug is uploaded by the user to a processor; certain attributes and categories of that image are analyzed and stored (such as color, shape, size, etc.); the uploaded image attributes and categories are compared to the attributes and categories of a number of stored images from the website; and once the comparison yields a positive match (or matches) based on certain criteria, the website images that match the uploaded image are displayed to the user. No text labels are necessary for the user, and the search results are based on the actual visual contents of the images. [2:12-13.][2] The '624 claims as a whole are a clear improvement to the visual computing and visual search related arts by offering a much simpler, easier to use, and more robust way of searching for images on a website. The '624 patent is therefore not directed to an abstract idea and offers significant improvements to visual computing, which results in its patent eligibility. The claims further contain an "inventive concept" by reciting a specific method for navigating a website with

---

[2] All column:row and FIG. citations are to the '624 patent unless otherwise noted.

an uploaded image and calculating and obtaining/displaying image search results based on the actual visual contents of the uploaded image, thereby making the results better and more robust. This method was not routine or conventional in the industry at the time of the invention.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Personal Jurisdiction

#### 1.     Kohl's

Kohl's is incorporated in Wisconsin, but it is a nationwide retailer with a *substantial* presence in Texas and this District. Indeed, it has at least eighty-four (84) stores in this state, making Texas its second largest market by store location. [*See* Declaration of Michael Chibib in Support of Slyce's Opposition to Defendants' Motion to Dismiss ("Chibib Decl."), Ex. 1 at 11.][3] Of these locations, at least twenty are located in this District, including those identified in Slyce's Complaint. [*Id.*, Ex. 2;[4] *see also* Complaint (Dkt. No. 1) at ¶¶ 5, 14]. Kohl's also owns a 540,000 square foot distribution center in Texas and leases a 1,515,000 square foot "online fulfillment center" in Texas, its largest fulfillment center nationwide. [*Id.*, Ex. 1 at 12.]

In addition to substantial operations in Texas, Kohl's operates and maintains a highly interactive commercial website available to potential customers in Texas and this District, available at https://www.kohls.com/. That website allows customers to specifically select store locations in Texas and this District and allows them to purchase products online for pickup in those stores, have products delivered to those stores, or have them shipped directly to the customers' homes. [Chibib Decl., Ex. 1 at 19; Exs. 2, 3.] Importantly, Kohl's website specifically invites potential customers to download the Kohl's mobile app (the subject of Slyce's infringement

---

[3] Highlighting has been added to several of the exhibits for ease of reference.
[4] Store locations in this District were confirmed by identifying the locations from Kohl's website that fall within the territories covered by the Western District of Texas, which can be found at https://www.txwd.uscourts.gov/court-information/office-locations/.

contentions in this case) to review and purchase Kohl's products on mobile devices like cell phones and tablets. [*Id.*, Exs. 3, 15; *see also* Complaint (Dkt. No. 1) at ¶¶ 4, 6, 8, 18-30.]

When users download Kohl's mobile app, they are required to consent to Kohl's binding terms and conditions of use, thereby contracting with Kohl's in this forum. [Chibib Decl., Exs. 6-8.] As part of those terms and conditions, users consent to allow Kohl's to track and use the customer information, including device and location information. [Chibib Decl., Ex. 6.] Once the app has been downloaded and the terms and conditions agreed to, the user can then utilize the "Scan & Shop" tool of Kohl's mobile app utilizing Syte's visual search navigation technology to search for products available in Kohl's stores. [Complaint (Dkt. No. 1) at ¶¶ 4, 6, 8, 18-30.] With respect to purchase and delivery of products, the Kohl's mobile app allows users to select "Your Favorite Store," including any one of the substantial number of stores in Texas and this District. [Chibib Decl., Exs. 4-14.] Users can then search the specific stores in this forum for products and purchase them for in-store pick up, or if they are not available in store, have the products delivered to stores or to customers' homes in this forum. [*Id.*; *see also id.*, Ex. 1 at 19; Exs. 26-33 (confirming products can be purchased through the Kohl's mobile app and picked up in stores located in this forum).]

Critically, Kohl's does not view its physical stores, website, and mobile application as separate and distinct sales channels. [Chibib Decl., Ex. 1 at 19 (noting that Kohl's does not have a "clear distinction between 'store' sales and 'digital' sales" and does "not report them separately."); *id.* at 22 (referring to "omnichannel support" as involving physical stores and buying online); *see also id.* at 8.] Instead, Kohl's stores and online presence (including its mobile application) are an intertwined "omnichannel" strategy designed to increase sales by providing multiple purchase and delivery options for customers. For example, according to Kohl's:

- Digital customers can choose to have most online orders either shipped to their home or picked up in any of our stores;
- Approximately 75% of digital customers also shop in stores;
- Digital orders may be shipped from a dedicated E-Commerce fulfillment center, a store, a retail distribution center, third parties or any combination of the above;
- Stores increase digital sales by providing customers opportunities to view, touch and/or try on physical merchandise before ordering online;
- Online purchases can easily be returned in stores;
- Kohl's Cash coupons and Yes2You rewards can be redeemed online or in store regardless of where they were earned.
- Customers who utilize the mobile app while in the store may receive mobile coupons to use when they check out.

[*Id.*, Ex. 1 at 19.]

In view of the forgoing, Kohl's stores, website, and mobile app are inextricably linked and are properly considered together in assessing Kohl's presence in this forum.

### 2. <u>Syte</u>

Syte is an Israeli company, but its business model and service offerings are targeted to large retailers based in the United States. According to Syte's current Vice President of Sales, Syte is focused on "[h]elping top brands [like Kohl's] deliver high-converting, redefined product discovery experiences" that "create new immediate revenue streams that attract Gen-Y/Z users and drive multi-digit % revenue growth." [*Id*, Ex. 16.] Syte's CEO has similarly stated that Syte's goal is to help retail partners like Kohl's "generate significant increases in revenue and attract new users." [*Id.*, Ex. 17.]

In addition to admitting to purposefully directing its activities to the United States market by contracting with Kohl's (*see* Def. Mot. at 11), Syte has also established other relationships with large retail enterprises based in the United States, including Nike, Tommy Hilfiger, and Forever21. [Chibib Decl., Exs. 16-19.] Apart from use by Kohl's customers, there can be no dispute that other residents of this forum use the software as well. [*Id.*, Ex. 24 (confirming that Syte powered Kim Kardashian's ScreenShop app; *Id.*, Ex. 25 ("The couch in this photo from one of our Austin, Texas

home tours is vintage. We were curious to see if Screenshop could find anything similar, and lo and behold, we were offered a near-replica from Urban Outfitters.").] Further, Syte is not just *aware* that its software will impact retailers and "customer experience" in this forum, it *knows* that for a fact according to admissions available on its own website. [*Id*., Ex. 23.]

With respect to distribution of its technology to retailers, Syte's co-founder and chief marketing officer has reportedly stated that it "can be added . . . in less than a day" and that "[c]lients pay a monthly license fee based on the number of image-matches likely to be used." [*Id.*, Ex. 19.] With respect to access to Syte's application, it is hosted on the Microsoft Azure Marketplace. [*Id.,* Ex. 21.] Microsoft Azure hosts applications in several locations, including Texas. [*Id.,* Ex. 22.]

## III.   ARGUMENT

### A.   This Court May Exercise Personal Jurisdiction Over Both Defendants In This Forum

Personal jurisdiction is governed by Federal Circuit law in patent cases. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). Where, as here, no jurisdictional discovery is conducted, the plaintiff need only make a *prima facie* showing. *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

A court may exercise personal jurisdiction over an out-of-state defendant if (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *Autobytel, Inc. v. Insweb Corp.*, No. 2:07-cv-00524, 2009 U.S. Dist. LEXIS 31287, at *1 (E.D. Tex. Mar. 31, 2009) (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).

If minimum contacts have been found, the defendant bears the burden of showing it would be unfair or unreasonable to maintain suit in the forum. *Id*. at 1568.

### 1.     <u>Kohl's is subject to personal jurisdiction in this forum</u>

Minimum contacts can be found on the basis of general jurisdiction, specific jurisdiction, or the stream of commerce theory. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011); *Beverly Hills Fan*, 21 F.3d at 1566. Specific jurisdiction in particular is satisfied when the defendant has "purposefully directed [its] activities at the residents of the forum, and the litigation results from alleged injuries that arise from or relate to those activities." *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08- cv-00026, 2009 U.S. Dist. LEXIS 3476, at *3 (E.D. Tex. Mar. 26, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Here, there can be no reasonable dispute that Kohl's has directed substantial activities at residents in this forum, and that Slyce's infringement allegations arise from these activities.

As demonstrated herein, Kohl's presence in this forum is not limited or attenuated. To the contrary, Kohl's has invested significant resources in developing a substantial presence in Texas. That presence includes eighty-four retail stores, and a substantial distribution and online fulfillment center in this forum. [*See* Section II.A.1., *supra*.] That presence is also supplemented by Kohl's online presence (including a commercially interactive website and mobile app), both of which are configured to allow Texas customers to shop and purchase products in this particular forum. [*Id*.] As acknowledged by Kohl's, these various sales channels serve to complement each other and Kohl's overall sales strategy. For example, the presence of local stores in this forum allow Kohl's "digital" customers to have products delivered to this forum, and also increases digital sales by allowing customers "to view, touch and/or try on physical merchandise before ordering online." [*Id*.] The mobile application also incentivizes customers to shop in physical

stores in this forum by providing coupons to customers that use the application in the stores. [*Id.*] Thus, the mobile application and physical stores are intertwined, and both are intended to increase sales *in this particular forum.*

In sum, by establishing eighty-four stores in this forum and providing infringing software intended to increase sales in this forum (both through physical stores and the mobile application), any argument that Kohl's has not "directed" its infringing activities to this forum is illogical and untenable. There is also no reasonable dispute that Slyce's claims arise out of that activity in this forum. Accordingly, Kohl's is subject to personal jurisdiction here.[5]

In addition to the foregoing, courts in Texas routinely confer jurisdiction on out-of-state defendants that operate interactive websites that allow customers to shop and purchase products in the forum. *See Andra*, No. 4:17-CV-00815, 2018 U.S. Dist. LEXIS 97378 at *11-15 (finding personal jurisdiction where a defendant sold products to customers in the forum through its interactive website); *Godo Kaisha*, 2017 U.S. Dist. LEXIS 45416 at *22.[6] Here, there is no meaningful difference between an interactive website that allows customers to browse and purchase products and a mobile application that does the same, and therefore the same bases for asserting jurisdiction over interactive websites are applicable here. With respect to Kohl's mobile

---

[5] Indeed, the substantial number of physical stores in this forum combined with Kohl's online presence here (including its website *and* mobile application) create far more of a connection to this forum than cases finding personal jurisdiction appropriate where a defendant's only connection to the forum is an interactive website. *See e.g.*, *Andra Grp., LP v. Bareweb, Inc.*, No. 4:17-CV-00815, 2018 U.S. Dist. LEXIS 97378 at *11-15 (E.D. Tex. June 11, 2018); *Godo Kaisha Ip Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134, 2017 U.S. Dist. LEXIS 45416 at *22 (E.D. Tex. March 1, 2018); *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-CV-313, 2009 U.S. Dist. LEXIS 90935 at *3-5 (E.D. Tex. Sept. 30, 2009); *Seoul Semiconductor Co. v. Nichia Corp.*, 2008 U.S. Dist. LEXIS 70391 (E.D. Tex. Sept. 10, 2008); *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006).

[6] *See also Versata Software*, 2009 U.S. Dist. LEXIS 90935 at *3-5 (finding personal jurisdiction when the defendants operated an interactive website that allowed the customers to purchase products in the forum); *Seoul Semiconductor*, 2008 U.S. Dist. LEXIS 70391 (E.D. Tex. Sept. 10, 2008) ("The website is more than just a passive site and provides sufficient interactivity to satisfy the minimum contacts requirement."); *AdvanceMe, Inc*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006).

app in particular, it is undisputed that users can select stores in this forum as "My Store;" use the

app to search for products in Kohl's stores in this forum; and purchase products through the app

in this forum for delivery here. [*See* Section II.A.1., *supra*.] These facts, combined with Kohl's

configuration of its app to locate specific stores to shop in Texas, are more than sufficient to

establish jurisdiction in this forum. *Id*.; *see also Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758

F. Supp. 2d 366, 374-76 (N.D. Tex. 2010) (asserting personal jurisdiction over the defendant

because "Go Satellite **deliberately held itself out as willing to sell to residents in all 50 states,**

**accepted customers from Texas, and shipped products to Texas**.") (emphasis added).[7, 8]

Kohl's is also subject to jurisdiction in this forum under the Federal Circuit's stream of

commerce theory. *See Beverly Hills Fan*, 21 F.3d at 1565 (finding that where a defendant places

an accused product or service into a forum state through an established distribution channel and

the cause of action for patent infringement is alleged to arise out of those activities, "[n]o more is

usually required to establish specific jurisdiction."); *Avocent Huntsville Corp. v. Aten Int'l Co.*,

---

[7] Like the Defendants in *Go Satellite*, neither defendant here can dispute that Kohl's website and mobile application are commercial and highly interactive, and that both allow purchases and delivery of products to residents in this forum. *Go Satellite Inc.*, 758 F. Supp. 2d at 372-76; Section II.A.1., *supra*; s*ee also Andra,* 2018 U.S. Dist. LEXIS 97378 at *11-15; *Godo Kaisha*, 2017 U.S. Dist. LEXIS 45416 at *22; *Versata Software,* 2009 U.S. Dist. LEXIS 90935 at *3-5; *Seoul Semiconductor Co. v. Nichia Corp.*, 2008 U.S. Dist. LEXIS 70391; *AdvanceMe, Inc*, 450 F. Supp. 2d at 673.

[8] In their motion, Defendants cite two cases suggesting Kohl's website is not sufficient to confer jurisdiction here. [*See* Defendants' Motion at 10 (citing to *Interactive Life Forms* and *Nexlearn*).] Both cases are easily distinguishable. In *Interactive Life Forms*, the court refused to exercise jurisdiction because defendants had not accepted customers from Texas, had not shipped products to Texas, had not targeted Texas residents in anyway, and their website was specifically configured to serve foreign customers instead. *Interactive Life Forms, LLC v. Weng*, No. A-12-CA-1182, 2013 U.S. Dist. LEXIS 193772, *15 (W.D. Tex. April 8, 2013). The exact opposite is true here. Kohl's, like the defendant in *Go Satellite*, has "deliberately held itself out as willing to sell to residents in all 50 states" and there can be no dispute that Kohl's has accepted customers from Texas and shipped products to Texas. [*See* Section II.A.1., *supra*.] Accordingly, this Court has personal jurisdiction over Kohl's. *Go Satellite Inc.*, 758 F. Supp. 2d at 374-76. In *Nexlearn*, the Federal Circuit rejected personal jurisdiction over the defendant because the sole basis for jurisdiction was the existence of a website and, among other things, there was no indication that any forum resident had or could purchase the defendants' products. *Nexlearn v. Allen Interactions, Inc.*, 859 F.3d. 1371, 1376-1380 (Fed. Cir. 2017). The facts in this case could not be more inapposite. [*See* Section II.A.1., *supra*.]

552 F.3d 1324, 1345 (Fed. Cir. 2008) (the holding of Beverly Hills Fan is that a non-resident defendant may be subject to personal jurisdiction based on its placement of infringing goods into the stream of commerce with the reasonable expectation that they would reach that forum).

Here, there can be no dispute that Kohl's itself is an established distribution channel in Texas. *See IDQ Operating, Inc. v. Aero. Communs. Holdings Co.*, No. 6:15-CV-7812016, U.S. Dist. LEXIS 130441 at *10 (E.D. Tex. June 10, 2016) (holding Wal-Mart was an established distribution channel). Similar to Wal-Mart, Kohl's has a substantial number of stores nationwide and in this forum, and it also has an interactive website available to residents in this forum that supplements its physical store locations along with substantial online fulfillment and distribution centers here. [*See* Section II.A.1., *supra*.] Its mobile app is also accessible to users in this forum and can be specifically configured to shop its physical locations in this forum and to have products delivered to this forum. [*Id.*] Given its substantial presence in this forum, and Kohl's express knowledge that the mobile application complements its stores in Texas, Kohl's knew, or should have known, that Texas residents would use Kohl's infringing software in this forum to increase sales in this forum. That is sufficient to establish jurisdiction here.[9]

---

[9] In stream of commerce cases involving component manufacturers, Texas courts have routinely found personal jurisdiction where defendants placed their products into a national distribution channel that terminated in the state of Texas. *See e.g.*, *Agis Software Dev. LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 U.S. Dist. LEXIS 167029 at *14-15 (E.D. Tex. Sept. 18, 2018); *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418, 2018 U.S. Dist. LEXIS 173065 at *4-7 (E.D. Tex. Sept. 6, 2018); *IDQ Operating,* U.S. Dist. LEXIS 130441 at *9-14. The same reasoning applies here where Kohl's knew, or should have known, that residents in this forum would use its infringing software in this forum.

### 2.    Syte is also subject to personal jurisdiction in this forum

Selling products to a nationwide retailer "is a strong indication that [the defendant] intends to direct its products nationwide." *ATEN Intern. Co. Ltd. v. Emine Technology Co., Ltd.*, 261 F.R.D. 112, 119 (E.D. Tex. June 25, 2009). And *a prima facie* showing of purposeful entry into the Texas stream of commerce is established by showing that the defendant's products were sold into a nationwide distribution network and that the products were available in Texas. *Id.*

As demonstrated herein, Syte specifically markets its technology to "top" brands and national retailers like Kohl's. [*See* Section II.A.2., *supra*.]  And it knows for a fact that its software will impact retailers and "customer experience" in this particular forum according to admissions available on its own website. [*Id.*] With respect to Kohl's in particular, given the research Syte likely conducts on potential retail customers, and given the information it likely learned about during the process of "contracting" with Kohl's (*see* Def. Mot. at 11), it is inconceivable that (1) Syte was unaware that Kohl's was a nationwide retail chain with locations across the United States, including Texas, and (2) that Kohl's customers (like others in Austin mentioned on Syte's website) would use the software here as well. It also cannot be disputed that the infringing software *is* made available through Kohl's nationwide distribution channel and is available to customers in Texas. [*See* Section II.A.1., *supra*.] This is more than sufficient to meet Slyce's prima facie burden that jurisdiction is proper over Syte in this forum. *See Agis Software*, 2018 U.S. Dist. LEXIS 167029 at *14-15; *Blitzsafe*, 2018 U.S. Dist. LEXIS 173065 at *4-7; *IDQ Operating,* U.S. Dist. LEXIS 130441 at *9-14.

**3.      At the very least, jurisdictional discovery is appropriate as to both Defendants**

The jurisdictional facts raised herein as to Syte and Kohl's are more than sufficient to establish a *prima facia* shown that both Defendants are subject to personal jurisdiction in this forum. Moreover, Defendants have not (and cannot) meet their burden to present a "compelling case" that jurisdiction is unreasonable and incompatible with "fair play and substantial justice." *See Go Satellite Inc.*, 758 F. Supp. 2d at 377 (citing *Burger King*, 471 U.S. at 477-78). Accordingly, personal jurisdiction is proper here. To the extent the Court disagrees, jurisdictional discovery is appropriate if a party demonstrates factual issues related to jurisdictional allegations that it can supplement through discovery. *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). Here, Slyce has demonstrated sufficient facts that, if supplemented through discovery, could demonstrate jurisdiction is proper as to both Defendants.

With respect to Kohl's, for example, it has a substantial presence in this forum, and the following discovery could supplement the jurisdictional facts raised herein:

- Kohl's presence in this forum, including through its physical stores, interactive website, and mobile application;
- Kohl's "omnichannel" sales strategy intended to increase sales, including to customers in this forum;
- Kohl's relationship with Syte;
- Kohl's contract with Syte for use of its mobile application, including in this forum;
- Information obtained by Kohl's from residents in this forum (including device and location information) related to their use of the mobile application;
- Targeted advertising to Texas residents based on its store presence and use of Kohl's mobile application in this forum;
- Sales and revenue generated from residents in this forum through its physical stores, website, and mobile application.

With respect to Syte, it should have known (or reasonably foreseen) that contracting with a national retail outlet like Kohl's would result in the use of its infringing software in the forum. Thus, information related to its knowledge of Kohl's as a nationwide retailer with a substantial

13

distribution channel across the United States would be relevant to the jurisdictional analysis, as is information related to Syte's efforts to contract with Kohl's and other companies with a presence in this forum. Any of Syte's other potential activities in this forum, including attendance at conferences, targeting sales at customers in Texas, etc. would also be relevant. Finally, the location of, and accessibility to, its application on marketplaces like Microsoft Azure in this forum are also relevant to the jurisdictional analysis.

In the event the Court agrees discovery is warranted, Slyce requests permission to serve twenty-five interrogatories, twenty-five requests for production, and up to five deposition notices to each defendant to address the information raised herein and in Slyce's complaint.[10]

**B.     Venue is Proper In This District As To Both Defendants**

     **1.     Venue for Kohl's is Proper Under 28 U.S.C. § 1400(b)**

In patent cases involving domestic entities like Kohl's, venue is proper (1) where the defendant has committed acts of infringement and (2) has a regular and established place of business. 28 U.S.C. § 1400(b). The first prong of Section 1400 is satisfied by allegations that the defendant has committed acts of infringement in the district. *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065, *9-12 (E.D. Tex. Sept. 6, 2018). The second prong of the statute is satisfied when: (1) there is a physical place in the district; (2) that is regular and established; and (3) that is a place of the defendant. *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 938-941 (E.D. Tex. 2018).

---

[10] If discovery is permitted, Slyce's counsel will work with Defendants' counsel to establish appropriate limits on discovery as well as a mutually agreeable schedule for conducting discovery and resubmitting briefing on the issue of personal jurisdiction.

Here, Kohl's does not (and cannot) dispute that Slyce has pled allegations of infringement by Kohl's in this District.[11] [Complaint at ¶ 11.] As to the second prong of the statute, Kohl's has at least twenty regular and established places of business in this District, including the specific locations identified in Slyce's Complaint. [*See* Section II.A.1., *supra*; *see also* Complaint (Dkt. No. 1) at ¶¶ 5, 14.] Any one of these locations is sufficient to establish venue as to Kohl's in this District. *See In re Cray,* 871 F.3d at 1361-64 (confirming Section 1400(b) requires only "*a physical place*" of business of the defendant in the District; in other words, at least one); *see also Seven Networks,* 315 F. Supp. at 938-941.

In its motion, Kohl's contends venue cannot be proper in this District under Section 1400(b) because it is not subject to personal jurisdiction here. [*See* Def. Mot. at 12.] As an initial matter, Kohl's is subject to personal jurisdiction in this forum for the reasons set forth above. More importantly, however, personal jurisdiction has *nothing* to do with whether venue is proper in this District. Venue in patent cases like this one is governed exclusively by Section 1400(b) and the test articulated *In re Cray* for determining whether the requirements of that statute are met.[12] As demonstrated immediately above, Kohl's twenty stores in this District satisfy the *Cray* test twenty times over, and Kohl's has identified no facts or legal authority to the contrary.[13]

---

[11] [*See* Def. Mot. at 11-12 (asserting venue is improper only because defendants (1) do not reside here and (2) do not have regular and established places of business here).]

[12] Indeed, the Supreme Court's decision in *TC Heartland* separated Section 1400(b) from the jurisdictional analysis and confirmed venue in patent cases is determined solely by the specific requirements *of that particular statute*. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519, 197 L. Ed. 2d 816 (2017) (confirming that Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions."). Attempts by parties to inject additional requirements into Section 1400(b) have been categorically rejected. *See Seven Networks,* 315 F. Supp. at 942-46 (citing cases).

[13] In its motion, Kohl's cites to a *single* case from this District and misleadingly suggests it requires proof of personal jurisdiction to establish venue here. [*See* Def. Mot. at 12 (citing *Interactive ToyBox* and then asserting venue is improper here because this Court lacks jurisdiction).] Yet the case contains no such holding. Instead, the court found venue was improper because the defendant did not have a "regular and established place of business" in the District under the test set forth in *Cray*. *Interactive ToyBox, LLC v. Walt Disney Co.*, 2018 U.S. Dist. LEXIS 182304 at *6-10 (W.D. Tex. Oct. 28, 2018).

Kohl's also confusingly asserts in its motion that "Texas cannot be the place of business of [Kohl's] merely because a nationwide retailer has two stores here." [*See* Def. Mot. at 12.] First, Kohl's has 20 stores in this District, not two. Second, this makes little sense and is contrary to *Cray*.[14] As noted immediately above, a single regular and established business in this District is sufficient to establish venue, which means two such locations would be more than enough. Moreover, Kohl's asserts no argument (let alone facts) that it did not establish its retail stores in this District, or that it does not own or control them such that they are not "of the Defendant." Accordingly, they are more than sufficient to establish venue here. *See Cray*, 871 F.3d at 1363-64; *Seven Networks, 315 F. Supp.* at 951-952 (noting ownership and control of the business location in the district are dispositive).

## 2.  Venue for Syte is Proper Under 28 U.S.C. § 1391(c)(3)

Syte also contends it is not subject to venue here because it has no "regular and established place of business" in this District as required by Section 1400(b). [Def. Mot. at 12.] However, whether Syte has a place of business in this District is irrelevant to the determination of venue. When a foreign corporation like Syte is sued for patent infringement, Section 1391 of general venue statute applies, not Section 1400(b). *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456, 2018 U.S. Dist. LEXIS 183553 at *4-5 (E.D. Tex. Oct. 26, 2018).[15] Under Section 1391, a foreign defendant may be sued in any judicial district in the United States, which includes this one. *See* 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d at 1354. Having admitted it is a corporation based in Israel (Def. Mot. at 3), there can be no dispute that venue as to Syte is proper in this District. *In re HTC Corp.*, 889

---

[14] Notably, Kohl's assertion is not supported by any legal authority, and therefore constitutes nothing more than attorney argument.

[15] *See also Blitzsafe Tex.,* 2018 U.S. Dist. LEXIS 173065 at *8 (noting the Supreme Court in *TC Heartland* made clear its venue ruling does not apply to foreign corporations).

F.3d at 1354; *see also Blitzsafe*, 2018 U.S. Dist. LEXIS 173065 at *7-8 (E.D. Tex. Sept. 6, 2018) ("BMWAG is a foreign entity . . . Accordingly . . . venue is proper in this District and, indeed, in any district."); *Weatherford Tech,* 2018 U.S. Dist. LEXIS 183553 at *6 (same).

### C.      Claim 1 of the '624 Patent is Directed to Patent Eligible Subject Matter

The U.S. Supreme Court ruled in *Commil USA, LLC v. Cisco Systems, Inc.* that the clear and convincing evidentiary standard applies to all challenges to a patent's validity. 135 S. Ct. 1920, 1928-29 (2015). As such, to support a claim for invalidity, a defendant has the burden to establish all facts "pertinent" to the analysis by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Here, that burden rests with Syte and Kohl's. On a motion to dismiss, defendants must discharge that burden using only the allegations in the complaint and evidence capable of judicial notice. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

The Court evaluates patent subject matter eligibility via a two-step process. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The first step is determining whether the claims are directed to a patent-ineligible concept like an abstract idea. *Id.* If the claims are not directed to an ineligible concept, the inquiry ends—the claims are eligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). If the Court determines the claims are "directed to" an ineligible concept like an abstract idea, it moves to the second step of the analysis. In that part of the analysis, the Court considers whether the claim's limitations, alone or as an ordered combination, contain an "inventive concept" applied to the identified idea to which the claims are directed—i.e., whether the claims contain "something more" than what was routine or conventional in the industry at the time of the invention. *Alice*, 134 S. Ct. at 2354-55. If so, the claims are patent eligible.

Determining whether a claim is directed to an abstract idea is a "meaningful" step. *Enfish*, 822 F.3d at 1335. It is not sufficient that claims "involve" an abstract idea because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)). A claim directed to a computer-device improvement, rather than an "abstract idea" that invokes computers "merely as a tool," is patent eligible. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361-62 (Fed. Cir. 2018). To make this determination, courts typically look to the claims as well as the intrinsic evidence, including patent specification and prosecution history. *See, e.g.*, *id.* at 1362-63; *Data Engine Tech. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018).

The Federal Circuit has emphasized the step two analysis requires consideration of "whether the claims contain an 'inventive concept' sufficient to transform the nature of the claim into a patent-eligible application." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016). In so considering, step two of the analysis cannot be limited to considering whether the alleged "additional elements" alone amount to significantly more than the alleged abstract idea. The Federal Circuit decision in *Berkheimer* made clear that one attacking the invalidity of a claim must factually demonstrate that the inventive concept of the claim is well-understood, routine, and conventional. *Berkheimer*, 881 F.3d at 1368 (agreeing that "summary judgment is improper" because no factual evidence was provided for "whether the claimed invention is well-understood, routine, and conventional"). The inventive concept may include one or more allegedly abstract elements that, in combination with the additional elements, form the claim's inventive concept. *Id.*

18

Importantly, the Federal Circuit has made clear that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Cellspin Soft, Inc. v. Fitbit, Inc.*, Nos. 2018-1817, 2018-1819, 2018-1820, 2018-1821, 2018-1822, 2018-1823, 2018-1824, 2018-1825, 2018-1826, 2018-2178, 2018-2179, 2018-2180, 2018-2181, 2018-2183, 2018-2184, 2019 U.S. App. LEXIS 18853, at \*25 (Fed. Cir. June 25, 2019) (*citing Aatrix Software*, 882 F.3d at 1126-27). Where, as in the instant case, factual disputes exist as to whether the claims involve an inventive concept, the Federal Circuit has made clear that this is "sufficient to survive an Alice/Mayo analysis at the Rule 12(b)(6) stage." *Aatrix Software*, 882 F.3d 1126.

### 1.      The '624 Patent Was Examined and Issued After the Supreme Court's *Alice* Decision

As an initial matter, the '624 patent was examined and issued after the Supreme Court reached its *Alice* decision in 2014. The patentee filed a request for continued examination (RCE) on May 21, 2014. The USPTO issued two Office Actions since that RCE (in June 2014 and February 2015), neither of which relied upon Section 101 as a basis for rejecting the claims. *See* June 19, 2014 Non-Final Rejection, [Chibib Decl., Ex. 34], and February 13, 2015 Final Rejection, [Chibib Decl., Ex. 35]. Importantly, the USPTO recently announced new guidelines for examining patents for subject matter eligibility. *See* 84 Fed. Reg. 4 (Jan. 7, 2019) [Chibib Decl., Ex. 36, p. 50]. These guidelines are even *less stringent* than the guidelines that were in place when the '624 patent was examined. In fact, the new guidelines expressly state that "any claim considered patent eligible under prior guidance should be considered patent eligible under this guidance." *Id* at 51. For this reason alone, the Court should deny defendants' motion as it relates to the '624 patent.

2.      *Alice* **- Step 1 - Claim 1 of the '624 Patent is Directed to an Improved Method of Visual Computing and Visual Search**

Defendants argue that claim 1 of the '624 patent is abstract because it may be performed mentally, by a mathematical algorithm, and/or pen and paper. [*See* Def. Mot. at 14], *citing, Elec. Power Grp.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). Defendants go on to argue that claim 1 of the '624 patent merely recites "equivalent mental processes for storing classifying, and indexing items, then using the index to search, compare, and retrieve items." [Def. Mot. at 15.] And that the claim is generic and not directed to a specific improvement to computer functionality. [*Id.* at 16.] However, claim 1 of the '624 patent cannot be performed mentally; neither can it be performed with pen and paper. The improvement claimed in the '624 patent allows a user to dynamically search for content on a webpage by using an image-based method instead of a text-based method, and for the search analysis to be based on the visual contents of the image rather than textual tags. [2:9-15.] A human is incapable of performing the steps of claim 1 because those steps are uniquely and specifically dedicated to visual computing. The whole purpose of the claim is to make searching for images *on a computer network* easier for everyday users and to improve results. As the Federal Circuit noted in *McRO*, claims are patent-eligible if they use specific "rules in a process specifically designed to achieve an improved technological result in conventional industry practice." 837 F.3d at 1316. Here, claim 1 recites a specific method for associating item attributes to stored images, [FIG. 2; 7:4-32], and for calculating the measure of distinction between an uploaded image and those stored images, including identifying images that are most similar, but not identical to the uploaded image. The specification details this method. [9:43-60.]

Defendants' step one analysis is also flawed because it over generalizes the claim language and fails to address claim 1 as a whole or as a particular ordered combination of steps that provide an improvement to another technology or technical field (e.g., improvement to a method of

searching for images on a website). [Def. Mot. at 14-16.] Defendants fail to treat claim 1 as a unique combination of steps; instead glossing it as simply "storing, classifying, and indexing items. . . ." *Id.* at 15. Claim 1 is patent-eligible because it, as a whole, is not directed to an abstract idea, but instead directed to providing an improvement to another technology or technical field (e.g., using image-based search instead of text-based search and analyzing the actual visual contents of the image in order to render image search results.) *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017).

### a. Claim 1 Is Necessarily Rooted In Computer Technology To Solve A Problem Specifically Arising In The Realm Of Computers

As an additional reason for patent eligibility under *Alice* step one, claim 1 is necessarily rooted in computer technology to solve a problem specifically arising in the realm of computers. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Prior art methods relied too heavily on text-based search methods and failed to provide a user with a graphical user interface that presents users with vast amounts of content in an image-based manner. [1:33-35.] Claim 1 recites a particular technical solution to at least the problems of how to use an internet browser to conduct image-based searching where results are based on the actual visual contents of the uploaded image (as opposed to user-entered text). [2:4-7, 9-16.] Because the claims provide a technical solution to a *computer-centric challenge* of image-based search, the claims are necessarily rooted in computer technology to solve a problem specifically arising in the realm of computers. For at least the foregoing reasons, claim 1 is patent-eligible under step one of the *Alice* test.

**3.      _Alice_ – Step Two - Defendants Have Failed to Establish the Lack of an Inventive Concept**

Defendants assert that claim 1 lacks an inventive concept in its step two analysis by claiming that the claim recites generic components and well-understood, routine, and conventional activities. [Def. Mot. at 18.] Defendants even go so far as to claim that claim 1 is directed to the age-old practice of clothes shopping that has been performed in the minds of salespeople for generations. [_Id._ at 19.] These arguments are stretched too thin. As discussed above, the method steps of claim 1 are specifically directed to solve a problem unique to computer networks. No human (neither shopper nor salesperson) is capable of uploading a digital image, analyzing that image, calculating the measure of distinction between that uploaded image and other stored images, to thereby display on a computer display the image search results.

Defendants further argue that claim 1 fails step two of _Alice_ because it merely recites generic computer components to perform well-understood, routine, and conventional activities commonly used in industry. [_Id._ at 18.] This argument also fails. The method steps recited in claim 1, as a whole, are not well-understood, nor are they routine and conventional. Defendant cannot simply take certain elements individually and assert that those elements are conventional.  Courts have cautioned against such attack of individual steps without viewing the claim as an ordered combination. _McRO,_ 837 F.3d at 1313.

Here, the method of claim 1 as a whole is completely novel and unique. A court must also look to the claims under _Alice_ step two as an ordered combination, without ignoring the requirements of the individual steps. _Id_. This is because, even when each limitation of a claim individually is abstract or generic, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." _BASCOM Global Internet Servs. v. AT&T Mobility LLC_, 827 F.3d 1341, 1350 (Fed. Cir. 2016). In _BASCOM_, the court agreed that all

the limitations of the claim at issue, when viewed individually, "are no more than routine additional steps involving generic computer components and the Internet … to accomplish the abstract idea of filtering Internet content." *Id.* at 1349. The claim limitations in *BASCOM* involved (i) generating requests for account access, (ii) the association of filtering schemes with filtering elements, and (iii) the receipt of such requests and the execution of associated filtering schemes using the associated filtering elements. Despite the lack of patent-eligibility of each claim limitation (when viewed individually), the *BASCOM* court concluded that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350. Specifically, the *BASCOM* court found the claims to be patent-eligible because they recited "a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts." *Id.* at 1352. It did not matter that a filtering system, its placement at a server, and filtering customizations were individually well-known, routine, and conventional, because the ordered combination (including limitations directed to the abstract idea) as a whole provided an improvement to another technology or technical field (e.g., content filtering systems). *Id.* at 1351-52 ("the claims are more than a drafting effort designed to monopolize the abstract idea. Instead, the claims may be read to improve an existing technological process."). Claim 1 recites a multitude of steps that provide for an Internet user to conduct image-based searching where results are based on the actual visual contents of the uploaded image. [2:4-7, 9-16.] The claim elements, taken as an ordered combination, involve specific and unconventional steps that amount to "significantly more" than the judicial exception. For the foregoing reasons, even if claim 1 is directed to an abstract idea, it adds an inventive concept that makes claim 1 patent eligible under *Alice* step two. At the very

least, Slyce has raised issues of fact as to inventive concept that would preclude dismissal at this early stage.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Defendants' Motion should be denied in its entirety. In the alternative, Slyce has raised disputed issues of fact with respect to personal jurisdiction as to both Defendants, and therefore it should be permitted to conduct jurisdictional discovery as to the issues raised herein.

Date: July 26, 2019                     Respectfully submitted,


                                        **PILLSBURY  WINTHROP  SHAW  PITTMAN
                                        LLP**

                                        */s/ Michael Chibib*
                                        Michael Chibib
                                        Texas Bar No. 00793497
                                        michael.chibib@pillsburylaw.com
                                        401 Congress Avenue, Suite 1700
                                        Austin, Texas 78701
                                        Telephone:  (512) 580-9609
                                        Facsimile:   (512) 580-9601

                                        ***Attorney for Plaintiff Slyce Acquisition Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2019, the foregoing document was served on all counsel of record via the Court's e-filing system.

*/s/ Michael Chibib*
Michael Chibib