**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| SLYCE ACQUISTION INC., ) | |
| ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 6:19-cv-00257-ADA |
| v. ) | |
| ) | |
| SYTE – VISUAL CONCEPTION LTD. ) | |
| AND KOHL'S CORPORATION, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(2), (3), AND (6)**

Oral Argument on Defendants' 12(b) Motion Requested

# TABLE OF CONTENTS

Page

I.    This Court Lacks Personal Jurisdiction Over Defendants .................................................. **1**

    A.    Kohl's Is Not Subject To Specific Personal Jurisdiction In Texas ......................... 1

        1.    *Kohl's Physical Locations In Texas Are Irrelevant* ................................... 2

        2.    *Kohl's Website Is Immaterial To Specific Jurisdiction* ............................. 3

        3.    *Slyce's Stream Of Commerce Theory Runs Against Supreme Court Case Law* ................................................................................................... 4

    B.    Syte Is Not Subject To Personal Jurisdiction In Texas ......................................... 6

        1.    *Syte Is Not Subject To Jurisdiction Under Fed. R. Civ. P. 4(k)(2)* ........... 6

        2.    *The Stream of Commerce Theory Does Not Apply To Syte* ...................... 7

        3.    *Syte's Contracts With Third Parties Are Irrelevant To Texas* ................. 7

    C.    Slyce's Request For Jurisdictional Discovery Is A Fishing Expedition ............... 8

II.   The Western District Of Texas Is An Improper Venue .................................................. **9**

    A.    Venue Is Improper Against Kohl's ......................................................................... 9

    B.    Venue Is Improper Against Syte ............................................................................ 9

III.  The '624 Patent Claims Are Directed To Patent Ineligible Subject Matter .................. **10**

    A.    USPTO Guidelines Are Not Binding .................................................................. 10

    B.    The '624 Patent Claims Are Directed To An Abstract Idea ............................... 10

    C.    The '624 Patent Claims Lack An Inventive Concept .......................................... 12

IV.   CONCLUSION ................................................................................................................ **14**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ................................................................. 12

*Agis Software Dev. LLC v. HTC Corp.*,
    2018 U.S. Dist. LEXIS 167029 (E.D. Tex. Sep. 28, 2018) .................................... 6

*Aten Int'l Co. v. Emine Tech. Co.*,
    261 F.R.D. 112 (E.D. Tex. 2009) .................................................................. 7

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, LLC,
    915 F.3d 743 (Fed. Cir. 2019) ................................................................. 13

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
    552 F.3d 1324 (Fed. Cir. 2008) .................................................................. 5

*Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*,
    729 F. Supp. 2d 789 (N.D. Tex. 2010). .................................................... 8, 9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ............................................................... 12

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) .................................................................. 5

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*,
    2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sep. 5, 2018) ..................................... 6

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017).................................................................. passim

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) .......................................................... 12, 13

*Citrix Sys. v. AVI Networks, Inc.*,
    363 F. Supp. 3d 511 (D. Del. 2019) ......................................................... 10

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    760 F. App'x 1013 (Fed. Cir. 2019) ......................................................... 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011).................................................................. 1, 2, 5

*IDQ Operating, Inc. v. Aero. Communs. Holdings Co.*,
    2016 U.S. Dist. LEXIS 130441 (E.D. Tex. Jun. 10, 2016).................................... 6

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017) .................................................................. 9

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)............................................................................................ 2

*Interactive Life Forms, LLC v. Weng*,
   2013 U.S. Dist. LEXIS 193772 (W.D. Tex. Apr. 8, 2013)................................... 4, 9

*Interactive ToyBox, LLC v. Walt Disney Co.*,
   2018 U.S. Dist. LEXIS 182304 (W.D. Tex. Oct. 24, 2018) ................................. 9

*NexLearn v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017) ......................................................................... 4

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ......................................................................... 11

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GMBH*,
   2015 U.S. Dist. LEXIS 89501 (N.D. Tex. Jul. 9, 2015) ..................................... 8, 9

*Silicon Labs., Inc. v. Cresta Tech. Corp.*,
   2014 U.S. Dist. LEXIS 95711 (W.D. Tex. Jul. 14, 2014) ................................... 3

*Solutran, Inc. v. Elavon, Inc.*,
   2019 U.S. App. LEXIS 22516 (Fed. Cir. Jul. 30, 2019)..................................... 11, 12

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ......................................................................... 11

*Thales Visionix, Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017) ......................................................................... 11

*Trintec Indus. v. Pedre Promotional Prods.*,
   395 F.3d 1275 (Fed. Cir. 2005) ......................................................................... 4

*Uniloc USA, Inc. v. AVG Techs. USA, Inc.*,
   2017 U.S. Dist. LEXIS 45125 (E.D. Tex. Mar. 28, 2017) .................................. 12

*Yanbin Yu v. Apple Inc.*,
   2019 U.S. Dist. LEXIS 110907 (N.D. Cal. Jul. 2, 2019)..................................... 13

Statutes

28 U.S.C § 1404(a) .................................................................................................. 13

28 U.S.C. § 1391(c)(3)............................................................................................. 12

Rules

Fed. R. Civ. P. 4(k)(2)............................................................................................. 8, 12

Slyce implicitly concedes that general jurisdiction is lacking for Kohl's and Syte, and its scattershot allegations about Kohl's retail locations fail to establish specific jurisdiction based on minimum contacts between Texas and the conduct giving rise to the lawsuit (i.e., the mobile app). Instead, Slyce argues an intermediate theory of personal jurisdiction based on Kohl's placing the mobile app into the "stream of commerce", but such a theory has been rejected by the United States Supreme Court in *Goodyear* and *Bristol-Myers Squibb, infra*. Slyce has also failed to establish appropriate venue, as this lawsuit should have been appropriately filed (against both Defendants) in Wisconsin. As to abstract subject matter, Slyce's arguments are not grounded in the patent claim, and cannot rebut the undeniable fact that the patent covers a basic mental process.

## I.  This Court Lacks Personal Jurisdiction Over Defendants

Because general jurisdiction is lacking over Kohl's (located and incorporated in Wisconsin) and Syte (an Israel company),[1] Slyce must establish "specific" personal jurisdiction, i.e., that there is a connection between Texas and the accused conduct by *each* of Kohl's and Syte.

### A.  Kohl's Is Not Subject To Specific Personal Jurisdiction In Texas

The only conduct by Kohl's relevant to this lawsuit is its distribution of the mobile app through third-party servers outside the state (D.I. 1 at ¶19). Slyce has not alleged that the mobile app was developed in Texas, or physically distributed by Kohl's in Texas (e.g., in its stores, distribution center, or fulfillment center, D.I. 13, at 4), or that Kohl's performs any steps of the claimed method of "using a graphical user interface" in Texas ('624 Patent, claim 1). Therefore, because Slyce's remaining allegations purporting to connect Kohl's to Texas are irrelevant to *this lawsuit*, they cannot support specific jurisdiction.

---

[1]      There is also no personal jurisdiction in Texas against Syte's US subsidiary. Syte – Visual Conception, Inc. is a Delaware corporation based in New York.

### 1.  *Kohl's Physical Locations In Texas Are Irrelevant*

The Supreme Court's recent *Bristol-Myers Squibb* case is highly instructive.  There, the defendant was found not subject to specific jurisdiction in California, even though it (a) engaged in extensive business activities in the state, (b) had five of its research and laboratory facilities, employing 160 employees, located there, and (c) employed about 250 sales representatives in the state and maintained a small state-government advocacy office in the state, and (d) sold more than $900 million of the *product at issue* in the state. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1778 (2017).

Rather, as is the case here, the critical considerations for specific jurisdiction had to do with the particular accused *conduct* in the case: the defendant did not develop the product at issue in the forum state, did not create a marketing strategy for the product in the state, and did not manufacture, label, package, or work on regulatory approval of the product in the state.  *Id*. Moreover, as is further the case here, the nonresident plaintiffs did not allege that they obtained the accused product in the state, nor that they were injured by the product in the state.  *Id*.

In short, the Ninth Circuit had erroneously found personal jurisdiction based on the *extent* of defendant's contacts with the state (as Slyce invites this Court to do), and the Supreme Court reversed, holding that it was error to apply a "sliding scale approach", under which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims".  *Id*., at 1781.  The Court reiterated that for specific jurisdiction, "a defendant's general connections with the forum are not enough".  *Id*.  See also, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).  What is needed is a connection "between the forum and the specific claims at issue".  *Bristol-Myers Squibb*, *supra*, at 1781.

2

Kohl's physical operations in Texas are irrelevant for specific jurisdiction because "the suit must arise out of or relat[e] to the defendant's contacts with the forum", and "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction". *Id.*, at 1780. Accordingly, Slyce's allegations about Kohl's stores, distribution center, and fulfillment center cannot support specific jurisdiction because they have nothing to do with the mobile app, or the claimed method allegedly performed by users of the app (i.e., "allowing a user of a browsing application to navigate image-based content using a graphical user interface"). Nor does the ability of customers to "view, touch and/or try on physical merchandise" in stores, the ability to return online purchases in stores, or that approximately 75% of digital customers shop in stores (D.I. 13, at 6) have any relevance to the asserted claim. And Slyce's argument regarding obtaining coupons from the mobile app to use in stores (D.I. 13, at 6) is irrelevant because the asserted claim has nothing to do with distributing or using mobile coupons. Indeed, Slyce has failed to distinguish cases, including in this District, rejecting similar claims of specific jurisdiction over national retail stores "because the patentee's theory would allow the exercise of personal jurisdiction in every state, not just Texas." *Silicon Labs., Inc. v. Cresta Tech. Corp.*, 2014 U.S. Dist. LEXIS 95711, at *12 (W.D. Tex. Jul. 14, 2014)

### *2. Kohl's Website Is Immaterial To Specific Jurisdiction*

For the same reasons, Slyce's assertion that "Kohl's operates and maintains a highly interactive commercial website available to potential customers in Texas" (D.I. 13, at 4) is irrelevant for specific jurisdiction. Slyce has not identified the website as performing the claimed method, but only Kohl's mobile app (D.I. 1 at ¶19). While Slyce asserts that the "website specifically invites potential customers to download the Kohl's mobile app" (D.I. 13, at 4), it does not allege that the website *distributes* the mobile app. Rather, Slyce admits the app is distributed through Apple's iTunes and Google Play (D.I. 1, ¶7), neither of which is located in Texas.

3

Slyce attempts to argue (based on a truncated screenshot) that Kohl's "contracts" in Texas with its users (D.I. 13, at 5), but the *unabridged* terms and conditions of the website and mobile app counsel against jurisdiction in Texas.  Those terms require users to agree to exclusive jurisdiction and venue for any dispute *in Wisconsin*.  (Supp. Yonay Dec., Ex. 2-3).  It would be the height of absurdity for those contracts to permit Slyce (a non-resident and non-party to the contract) to file suit here, where *Texas users of the app are required to litigate in Wisconsin*.  Slyce cites no cases supporting jurisdiction in a patent case based a defendant's contract with users, much less where they include venue provision outside the forum state.  As the Supreme Court held, a contract between a defendant and a third party in the state, standing alone, is an insufficient basis for jurisdiction.  *Bristol-Myers Squibb*, *supra*, at 1783.

Next, while recognizing that personal jurisdiction in patent cases is governed by Federal Circuit law (D.I. 13, at 7), Slyce relies on a string of cases (D.I. 13, at 9-10) applying the *Fifth Circuit's* adoption of the *Zippo* sliding scale test for interactive websites.  That fact alone dooms these cases to irrelevance.  *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 n.4 (Fed. Cir. 2017)  ("We agree with the district court's decision not to apply the *Zippo* 'sliding scale' test to assess personal jurisdiction"); *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005); ("the ability of… residents [of the forum state] to access the defendants' websites… does not by itself show any persistent course of conduct by the defendants in the [state]"); *Interactive Life Forms, LLC v. Weng*, 2013 U.S. Dist. LEXIS 193772, at *12 (W.D. Tex. Apr. 8, 2013) ("the Federal Circuit has not endorsed or adopted the *Zippo* sliding scale test").

### 3.  *Slyce's Stream Of Commerce Theory Runs Against Supreme Court Case Law*

Slyce's only jurisdictional theory relating to the mobile app itself – i.e., that Kohl's placed the app into the "stream of commerce" (D.I. 13, at 8, 10-11) – is fundamentally incorrect as a matter of Supreme Court precedent.  As the Supreme Court clarified recently, there are only "two

types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction". *Bristol-Myers Squibb*, *supra*, at 1779-80.  There is no third "stream of commerce" basis for personal jurisdiction, as Slyce argues (D.I. 13, at 8).

Slyce cites only two appellate cases in support of its theory: *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (recognizing the Supreme Court split on the stream of commerce theory in *Asahi*), and *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1341 (Fed. Cir. 2008) (dismissing for lack of personal jurisdiction),[2] both of which predate the Supreme Court's decisions in *Goodyear* and *Bristol-Myers Squibb*, both of which found no personal jurisdiction based on a stream of commerce theory.

As in *Bristol-Myers Squibb*, the accused conduct affecting Slyce did not take place in Texas, because Slyce did not purchase, download, or use the allegedly infringing mobile app here.  Moreover, because Slyce is not a resident, it cannot claim to be injured in Texas by the alleged infringement.  *See Bristol-Myers Squibb, supra,* at 1781 ("a defendant's relationship with a... third party, standing alone, is an insufficient basis for jurisdiction").  *Id*.

Even if a narrowed "stream of commerce" theory of specific jurisdiction survived *Bristol-Myers Squibb*, the Federal Circuit's holding in *Beverly Hills Fan* is distinguishable.  Defendants there knowingly established an on-going relationship with a specific retailer physically located in the state.  *Beverly Hills Fan*, *supra*, at 1564.  Here, the only distribution channels for the accused products are the iTunes server and Google Play Store, which are not located in Texas.  The mere fact that Kohl's is a national retailer (as are Google and Apple, for that matter) is insufficient. *Bristol-Myers Squibb*, *supra*, at 1783 (defendant's "decision to contract with a… company… to distribute [the product at issue] nationally … is not enough to establish personal jurisdiction…")

---

[2]     Slyce's brief (D.I. 13, at 10-11) quotes from the dissenting opinion in *Avocent*.  *Id*., at 1345.

Slyce's other cited cases similarly predate *Bristol-Myers Squibb*, are not controlling, and easily distinguishable. *IDQ Operating, Inc. v. Aero. Communs. Holdings Co.*, 2016 U.S. Dist. LEXIS 130441, at *2, 10-11 (E.D. Tex. Jun. 10, 2016) (plaintiff had its principal place of business in Texas, and Wal-Mart purposefully shipped the accused products into Texas *through Wal-Mart's stores physically located in Texas*); *Agis Software Dev. LLC v. HTC Corp.*, 2018 U.S. Dist. LEXIS 167029, at *3, 12-13 (E.D. Tex. Sep. 28, 2018) (plaintiff was a Texas company, and defendant shipped the accused product to its subsidiary "who in turn sold them to carriers and retailers in Texas"); *Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG*, 2018 U.S. Dist. LEXIS 173065, at *5-6 (E.D. Tex. Sep. 5, 2018) (defendant shipped the accused product to its North American sister company, which "distribute[d] the accused vehicles to consumers in Texas").

Here, Kohl's did not hire a Texas retailer to distribute the accused product, and Apple and Google are not subsidiaries or sister companies to Kohl's. Thus, even if the stream of commerce theory is valid, the iTunes server and Google Play Store cannot be considered part of an established distribution channel controlled by Kohl's, and distribution by third parties is insufficient to establish personal jurisdiction. *Bristol-Myers Squibb*, *supra*, at 1783.

**B.  Syte Is Not Subject To Personal Jurisdiction In Texas**

Slyce's arguments for personal jurisdiction over Syte are even further removed than Kohl's, and fail for similar reasons.

*1.  Syte Is Not Subject To Jurisdiction Under Fed. R. Civ. P. 4(k)(2)*

Slyce has apparently abandoned its original basis for personal jurisdiction (D.I. 1, at 12) based on Fed. R. Civ. P. 4(k)(2), and rightly so, as neither of the two requirements of the rule apply, *viz.*, "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." As explained in Defendants' opening brief (D.I. 6, at 11), Rule 4(k)(2)(A) does not apply

because Syte is in fact subject to (specific) personal jurisdiction in Wisconsin for contracting to provide the accused technology to Kohl's.  Moreover, Rule 4(k)(2)(B) does not apply, because Slyce has not established any contacts of Syte with Texas, much less minimum contacts sufficient to support jurisdiction.

### 2.   *The Stream of Commerce Theory Does Not Apply To Syte*

For reasons similar to those discussed above for Kohl's, Syte is even less subject to personal jurisdiction in Texas under a purported "stream of commerce" theory.  Syte's sole accused conduct in the complaint is that is contracted with Kohl's, a Wisconsin company (D.I. 1, at ¶ 8), which in turn distributed the mobile app nationally through third party servers.  As in *Bristol-Myers Squibb*, Syte's "decision to contract with a… company… to distribute [the product at issue] nationally… is not enough to establish personal jurisdiction in the State".  *Bristol-Myers Squibb*, *supra*, at 1783.  In addition to the stream of commerce cases distinguished above, Slyce cites to another pre-*Bristol-Myers Squibb* case, *Aten Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112 (E.D. Tex. 2009).  Again, even if *Aten*'s rationale for personal jurisdiction survived *Bristol-Myers Squib*, it is distinguishable on the facts.  For example, there, unlike here, the accused products were "consistently available at retail stores in Texas", *Aten*, *supra*, at 119, whereas the Kohl's app is not downloaded from the physical stores.

### 3.   *Syte's Third Party Contracts Are Irrelevant To Texas*

Slyce's assertion that Syte has "admit[ed] to purposefully directing its activities to the United States market" (D.I. 13, at 6) is entirely irrelevant to personal jurisdiction *in Texas*. Specifically, Syte's relationships with Nike, Tommy Hilfiger, and Forever 21 (D.I. 13, at 6) are

irrelevant: (a) none of those companies are alleged to be headquartered in Texas, and (b) Slyce has not accused any conduct relevant to this action based on those relationships.[3]

Slyce further alleges that Syte's application is hosted on Microsoft Azure Marketplace, "which hosts applications in several locations, including Texas" (D.I. 13, at pg. 7). The fact that Syte contracted with a company that happens to have a Texas facility is irrelevant. As provided in the Supplemental Declaration of Ofer Fryman, Syte's application has never been hosted by Microsoft Azure Marketplace's "South Central US" region, which is in Texas. Fryman Supp. Dec. ¶2; Chibib Declaration, Ex. 22 (D.I. 13-1, Ex. 22).

### C. Slyce's Request For Jurisdictional Discovery Is A Fishing Expedition

Finally, recognizing it has failed to allege sufficient facts for personal jurisdiction, Slyce requests jurisdictional discovery. However, jurisdictional discovery should not be permitted "unless the motion to dismiss raises issues of fact". *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GMBH*, 2015 U.S. Dist. LEXIS 89501, at *11 (N.D. Tex. Jul. 9, 2015). Here, Slyce does not identify any specific Texas-related facts in dispute, nor does it contest the Fryman Declaration; rather, it is telling that Slyce openly seeks to "supplement" the record (D.I. 13, at 13), not merely corroborate jurisdictional allegations in the complaint. There is simply no *dispute of fact* that requires discovery, and Slyce has done nothing more than "provide a laundry list of subjects on which it would have this court allow it to conduct discovery." *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 797 (N.D. Tex. 2010). A demonstration of specific jurisdictional facts is "especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations." *Id*., at 797-98.

---

[3]      Slyce's reference to a particular celebrity finding a piece of furniture in Texas using Syte's mobile app (D.I. 13, at 6-7) does not merit a response.

In short, Slyce's request for discovery is "no more than a 'fishing expedition' into jurisdictional facts, which a court need not allow". *SGIC Strategic Glob. Inv. Capital, Inc.*, 2015 U.S. Dist. LEXIS, at *12 (citing *Bell Helicopter Textron, Inc.*, 729 F. Supp. 2d at 797-98).

## II.    The Western District Of Texas Is An Improper Venue

Venue must be proper as against *each* defendant, but as discussed below, venue in the Western District of Texas is improper against Kohl's or Syte.

### A.  Venue Is Improper Against Kohl's

Slyce incorrectly argues that "personal jurisdiction has *nothing* to do with whether venue is proper in this District" (D.I. 13, at 15, emphasis in original).  On the contrary, 28 U.S.C. § 1400(b) "requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision." *Interactive ToyBox, LLC v. Walt Disney Co.*, 2018 U.S. Dist. LEXIS 182304, at *6 (W.D. Tex. Oct. 24, 2018) (citing *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017)).  Thus, if personal jurisdiction is lacking, *a fortiori*, venue under § 1400(b) cannot be established.  Slyce's reliance on *Cray*, *supra* (D.I. 13, at 15-16) is unavailing, as that case found venue to be improper.

### B.  Venue Is Improper Against Syte

Slyce misstates the law by asserting categorically that "a foreign defendant may be sued in any judicial district in the United States" (D.I. 13, at 16, citing 28 U.S.C. § 1391(c)(3)).  Rather, venue against a foreign company is only proper where personal jurisdiction can be established. *Interactive Life Forms*, *supra*, at *18 ("because venue is only appropriate where personal jurisdiction exits, venue… is improper because personal jurisdiction does not exist in Texas"). Because Syte is not subject to specific jurisdiction in Texas, venue is improper.

### III.    The '624 Patent Claims Are Directed To Patent Ineligible Subject Matter

Slyce has not shown that the '624 Patent is directed to anything but an abstract idea, nor has it pointed to any claimed technological innovation.[4]

#### A.  PTO Guidelines Are Not Binding

Initially, Slyce argues that the Court should deny the motion to dismiss for the sole reason that the '624 Patent was granted after the Supreme Court's *Alice* decision, and the PTO had enacted guidelines for examining subject matter eligibility at the time the patent was issued.  (D.I. 13, at 19).  We are not aware of any decision finding patent-eligible subject matter on such grounds, and the Federal Circuit has expressly held that PTO guidelines are not binding on courts.  *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019) (unpublished opinion); see also, *Citrix Sys. v. AVI Networks, Inc.*, 363 F. Supp. 3d 511, 516 n.2 (D. Del. 2019) ("The PTO Guidance… is not binding on the Court").

#### B.  The '624 Patent Claims Are Directed To An Abstract Idea

Under *Alice* step one, Slyce argues that claim 1 of the '624 Patent is directed to an unspecified improvement to computing because it makes searching for images on a computer network "easier for everyday users" – but that is not a technological innovation, merely an alleged result.  Slyce further argues (without support) that "claim 1 of the '624 patent cannot be performed mentally, neither can it be performed with pen and paper" (D.I. 13, at 20).  However, it has failed to identify any non-abstract idea embodied in the claims.  Slyce argues that claim 1 was "intended" to be used in conjunction with computers, but the § 101 inquiry "must focus on the language of the Asserted Claims themselves."  *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149

---

[4]    Slyce does not dispute that claim 1 is representative of all claims (D.I. 6, at 15), and has similarly focused its analysis on this claim (D.I. 13, at 20-23).

(Fed. Cir. 2016).  Here, nothing in claim 1 even mentions a computer or a computer network: "storing a plurality of images…; analyzing a first image…; storing the attribute information; receiving a user selection…; calculating a measure of distinction…; determining the second item to be similar to the first item…; and displaying a second image…"  As in *Synopsis, supra*, Slyce "cannot rely on cases such as *Enfish* and *McRO* (which claimed specific improvements to a computer), because Slyce's claim does not "call for any form of computer implementation of the claimed method" and is "so broad as to read on an individual performing the claimed steps mentally or with pencil and paper". *Id.*[5]  Similarly, Slyce's bare assertion that claim 1 is "necessarily rooted" in computer technology (D.I. 13, at 21) is not credible when, unlike the claim at issue in *DDR Holdings*, claim 1 simply does not require any computer technology.

Slyce's reliance on *Thales Visionix, Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017) is unavailing.  In that case, the claim expressly required physical devices, such as "a first inertial sensor mounted on the tracked object", "a second inertial sensor mounted on the moving reference frame" and others.  *Id.*, at 1345.  Compare, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (distinguishing *Thales Visionix*, where "the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas").

Slyce blandly argues that a "human is incapable of performing the steps of claim 1" (D.I. 13, at 20), but it has not responded to the detailed claim chart (D.I. 6, at 15-16) showing how each and every step of claim 1 can be – and is in fact – performed mentally by humans.  *Solutran, Inc. v. Elavon, Inc.*, 2019 U.S. App. LEXIS 22516, at *10 (Fed. Cir. Jul. 30, 2019) (human performance

---

[5]      For purposes of comparison, the claim in *Synopsys* found to cover a mental process involved "converting the flow control statements and directive statements in the user description for a logic signal Q into an assignment condition AL(Q) for an asynchronous load function AL… generating a level sensitive latch…; wherein said assignment condition AD(Q) is a signal on a data input line of said flow through latch…" *Id.* at 1142.  Claim 1 of the '624 Patent is far less technical.

of claimed functions supported patent-ineligibility).  Further, unlike the claim at issue in *DDR Holdings*, the claim at issue here *does* have a pre-computer analogue (D.I. 6, at 15-16).  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014); *See Uniloc USA, Inc. v. AVG Techs. USA, Inc.*, 2017 U.S. Dist. LEXIS 45125, at *26 (E.D. Tex. Mar. 28, 2017) ("human performance example shows that distributing software in a client-server network environment has [a] preexisting analog").  Slyce's argument that the patent improves search by using images, rather than words (D.I. 13, at 21) is nothing more than the application of the age-old adage that "a picture is worth a thousand words".

Slyce asserts vaguely that Defendants failed to address claim 1 as a whole or as a particular ordered combination of steps (D.I. 13, at 20), but fails to support those arguments.  The claim chart (D.I. 6, at 15-16) analyzes claim 1 as a whole, in the exact order in which the steps are written, and the analysis is "directly tethered to the claim language".  *Solutran, Inc.*, 2019 U.S. App. LEXIS at *13.  In short, "the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art".  *Id*., at 14 (citing *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)).

### C.  The '624 Patent Claims Lack An Inventive Concept

Slyce incorrectly argues that as a matter of law, a defendant "must factually demonstrate that the inventive concept of the claim is well-understood, routine, and conventional" (D.I. 13, at 18, citing *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)).  On the contrary, as the Federal Circuit held there, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry".  *Berkheimer, supra*, at 1368.  Further, "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine".  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).  Rather, at *Alice*, step two, the Court must "search for an inventive concept... that is sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.*   "After identifying an ineligible concept at step one, we ask at step two 'What else is there in the claims before us?'" *Id.*

Here, Slyce has pointed to nothing that remains after identifying the abstract concept of finding visually similar items, and the patent in practice amounts to nothing more than the ineligible concept itself.  Further, "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept… If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *Id.*, at 1290-91.

Slyce incorrectly asserts that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)" (D.I. 13, at 19).  Here, Slyce has not alleged *a single fact* in the complaint (or in its opposition brief, for that matter) that supports an inventive concept.  *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, LLC, 915 F.3d 743, 755 (Fed. Cir. 2019) ("unlike in *Aatrix*… [the patentee] directs us to no factual allegations in its complaint… that [the patent at issue] is anything other than standard and known per se in the art").  Indeed, it cannot do so in view of the extensive reliance by the '624 Patent on admittedly known techniques (D.I. 6, at 3-5).  Merely positing the *legal* conclusion that claims are patent-eligible does not amount to a disputed *factual* allegation.  *Yanbin Yu v. Apple Inc.*, 2019 U.S. Dist. LEXIS 110907, at *6-7 (N.D. Cal. Jul. 2, 2019) ("[t]o be sure, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or

other sanctions"). Slyce's naked assertions that claim 1 amounts to "significant more" is not enough, when it cannot point to a single technical step in the claimed method.

## IV.    CONCLUSION

For the foregoing reasons, this court the Court should dismiss for lack of personal jurisdiction and improper venue. Otherwise, the '624 patent is invalid as being directed to patent ineligible subject matter.

Respectfully submitted,

By: */s/ David Deaconson*
David N. Deaconson
Texas Bar Card No. 05673400

PAKIS, GIOTES, PAGE & BURLESON, P.C.
P.O. Box 58
Waco, Texas 76703-0058
Tel: (254) 297-7300
Fax: (254) 297-7301
deaconson@pakislaw.com

Guy Yonay (admitted *pro hac vice*)
PEARL COHEN ZEDEK LATZER BARATZ LLP
1500 Broadway, 12th Floor
New York, NY 10036
Tel: (646) 878-0800
Fax: (646) 878-0801
gyonay@pearlcohen.com

*Attorneys for Defendants*
  *Syte – Visual Conception Ltd. and*
  *Kohl's Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1) on this the 9th day of August, 2019.

/s/ David N. Deaconson
David N. Deaconson
Texas Bar Card No. 05673400

PAKIS, GIOTES, PAGE & BURLESON, P.C.
P.O. Box 58
Waco, Texas 76703-0058
Tel: (254) 297-7300
Fax: (254) 297-7301
deaconson@pakislaw.com

*Attorneys for Defendants*
  *Syte – Visual Conception Ltd. and*
  *Kohl's Corporation*