**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SLYCE ACQUISITION INC.,** | § | |
| *Plaintiff* | § | |
| | § | **W-19-CV-00257-ADA** |
| **v.** | § | |
| | § | |
| **SYTE - VISUAL CONCEPTION LTD.,** | § | |
| **KOHL'S CORPORATION,** | § | |
| *Defendants* | § | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. CIV. P. 12(b)(2), (3), AND (6)**

Before the Court is Defendants Syte – Visual Conception Ltd. and Kohl's Corporation's

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6), which was filed on July 2,

2019.  ECF No. 6.  Plaintiff Slyce Acquisition Inc. filed its response on July 26, 2019.  ECF No.

13.  Defendants filed their reply on August 9, 2019.  ECF No. 14.  Slyce filed its sur-reply on

August 15, 2019.  ECF No. 16.  For the reasons described herein, the Court **DENIES**

Defendants' Motion.

I.      **Factual Background**

Slyce filed the instant action on April 11, 2019 alleging infringement of U.S. Patent No.

9,152,624.  The '624 Patent is entitled "Systems and methods for visual presentation and

navigation of content using data-based image analysis."  The '624 Patent recites a method and

system that allows a user to upload an image of what he/she would like to search for.  Then, in

accordance with the invention covered by the '624 Patent, "certain attributes and categories of

that image are analyzed and stored (such as color, shape, size, *etc.*); the uploaded image

attributes and categories are compared to the attributes and categories of a number of stored

images from the website; and once the comparison yields a positive match (or matches) based on certain criteria, the website images that match the uploaded image are displayed to the user. No text labels are necessary for the user, and the search results are based on the actual visual contents of the images." ECF No. 13 at 3. Slyce alleges that Defendants each infringe at least claim 1 of the '624 Patent. *See, e.g.*, ECF No. 1 at ¶¶ 28–29.

Defendant Kohl's is a Wisconsin corporation with its principal place of business in Menomonee Falls, Wisconsin. ECF No. 6 at 1. Kohl's is a nationwide retailer with multiple physical stores in this district. *Id.*; ECF No. 13 at 15. Kohl's also sells products through its website and its mobile app. ECF No. 6 at 1. Syte is an Israeli corporation with principal place of business in Tel Aviv. *Id.* Neither party appears to contend that Syte has a regular and established place of business within this district. *Id.*; ECF No. 13 at 16–17.

Slyce alleges that Kohl's, through the "Scan & Shop" tool in its mobile app, directly infringes at least claim 1. ECF No. 1 at ¶ 28. Slyce alleges that Syte knowingly induced Kohl's to directly infringe at least claim 1 "selling, offering for sale, providing, maintaining, and/or licensing its visual search navigation software with the intent that Kohl's utilize that software to implement the 'Scan & Shop' tool of the Kohl's mobile app in the United States." *Id.*at ¶ 29.

## II.    Legal Standards

### A.    Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss an action when it lacks personal jurisdiction over the defendant. For patent cases, Federal Circuit law governs personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). When there has not been any jurisdictional discovery or an evidentiary

hearing regarding jurisdiction, the "plaintiff usually bears only a *prima facie* burden." *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Personal jurisdiction is proper where the state long-arm statute permits service of process on the defendant and the requirements of due process are satisfied. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). Because the Texas long-arm statute has been interpreted as extending to the limit of due process, these two inquiries are the same for district courts in Texas. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). The Supreme Court has articulated a two-pronged test to determine whether the requirements of due process are satisfied: 1) the nonresident must have "minimum contacts" with the forum state, and 2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Breckenridge*, 444 F.3d at 1361.

General jurisdiction is present only when a plaintiff can show the defendant's connection to a forum is "so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show minimum contacts exist under the first two prongs, but the defendant has the burden of proving the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350

(Fed. Cir. 2003).  The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The test of reasonableness and fairness is "a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events."  *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (citing *Burger King*, 471 U.S. at 477).  This test requires balancing the following factors: " (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies."  *Viam Corp.*, 84 F.3d at 429.

The Federal Circuit has also applied the "stream of commerce" theory born in *WorldWide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) and reaffirmed in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).  *See Beverly Hills Fan*, 21 F.3d at 1566.  In *Asahi*, two four-justice pluralities offered slightly different versions of this theory as a means of establishing the existence of minimum contacts.  *Id.*  Justice Brennan, supported by three other justices, argued jurisdiction could be validly exercised over a defendant who placed goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state.  *See Beverly Hills Fan*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 117).  Justice O'Connor, also

supported by three other justices, argued there must be "more than the mere act of placing a product in the stream of commerce" and endorsed the additional requirement of "an action of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi*, 480 U.S. at 112 (emphasis removed)).

The Federal Circuit has repeatedly refused to endorse either articulation of the stream of commerce theory. *See, e.g., Beverly Hills Fan*, 21 F.3d at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364.

### B.    Venue

"Any civil action for patent infringement may be brought in any judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). When a foreign corporation is sued for patent infringement, 28 U.S.C. § 1391 applies and not 28 U.S.C. § 1400. *In re HTC*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).

A party may move to dismiss a claim for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Once a defendant challenges venue, "the plaintiffs have the burden to prove that the chosen venue is proper." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,

982 F. Supp. 2d 714, 719 (W.D. Tex. 2013) (citation omitted).  On a Rule 12(b)(3) motion to dismiss for improper venue, the court must view all the facts in a light most favorable to the plaintiff.  *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009).  "Thus, a plaintiff may show that venue is proper by 'setting forth facts that taken as true would establish venue.'"  *Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 719*; see also Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

### C.     Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).  A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmly. Supervision & Corrs. Dep't*, 479 F.3d 377, 380

(5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief.  *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his. . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

> **D.      Patent ineligibility Under 35 U.S.C. § 101**

Section 101 of the Patent Act defines patent-eligible subject matter as follows: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent."  35 U.S.C. § 101. Section 101 includes the following exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

The Supreme Court has developed a two-part test to distinguish between patents that "claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." *Id.* at 217.  In the first step, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft*

*Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 218).  In this step, the Court asks, "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335–36.

If the claims are directed to a patent-ineligible concept, then in the second step, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78—79 (2012)).  The additional elements "must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (quoting *Mayo*, 566 U.S. at 79).  However, "even if each claim element, by itself, was known in the art, 'an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.'"  *Uniloc USA, Inc. v. Med. Info. Tech., Inc.*, No. 6:16-CV-00463-RWS, 2017 WL 3707439, *2 (E.D. Tex. Mar. 30, 2017) (quoting *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

### III.   Legal Analysis

#### A.   Personal Jurisdiction

##### 1.   Kohl's is subject to personal jurisdiction in this forum

Slyce argues that personal jurisdiction is proper for Kohl's based on both specific jurisdiction and under the stream of commerce theory.  ECF No. 13 at 8–11.  Slyce contends that "Kohl's has directed substantial activities at residents in this forum, and that Slyce's infringement allegations arise from these activities."  *Id.* at 8.  In particular, Slyce points to the

fact that Kohl's has a substantial presence in Texas including eighty-four stores and its largest distribution and online fulfillment center in the United States. *Id.* at 1, 8. Slyce contends that this physical presence is supplemented by Kohl's website and its mobile app, and that "these components of its sales channel are inextricably intertwined as part of its 'omnichannel' sales strategy." ECF No. 16 at 1. Slyce contends that Kohl's stores, website, and mobile app are intertwined because:

> the presence of local stores in this forum allow Kohl's "digital" customers to have products delivered to this forum, and also increases digital sales by allowing customers "to view, touch and/or try on physical merchandise before ordering online." The mobile application also incentivizes customers to shop in physical stores in this forum by providing coupons to customers that use the application in the stores.

ECF No. 13 at 8–9 (citations omitted). Slyce contends that the "intertwined 'omnichannel' sales strategy is designed to increase sales and customer service, including in this particular forum." ECF No. 16 at 2.

In its reply, Kohl's contends that (1) its physical locations in Texas are irrelevant and (2) its website is immaterial to specific jurisdiction. ECF No. 14 at 2–3. With respect to the former, Kohl's contends that "Slyce's allegations about Kohl's stores, distribution center, and fulfillment center cannot support specific jurisdiction because they have nothing to do with the mobile app, or the claimed method allegedly performed by users of the app." *Id.* at 3. With respect to the latter, Kohl's contends that "Slyce has not identified the website as performing the claimed method, but only Kohl's mobile app." But both of these arguments miss the mark. As described above, Slyce does not contend that the Kohl's physical locations and its website each independently provide the basis for personal jurisdiction, but rather that the combination of Kohl's physical locations, its website, and its mobile app comprise an "intertwined omnichannel" sales strategy that is "intended to serve Texas residents and increase sales in this particular

forum." ECF No. 16 at 1 (emphasis removed). Because the accused software allows a consumer to take a picture of an item anywhere the consumer is and quickly find a similar item in a nearby Kohl's store or on the Kohl's website demonstrates that Kohl's "intertwined omnichannel" sales strategy serves Texas residents, and could increase sales and grow its business in Texas.

Based on the above, the Court finds that Slyce has made at least a *prima facie* showing of demonstrating that Kohl's has "purposefully directed activities at residents of the forum" and Slyce's claim "arises out of or relates to those activities." *Elecs. For Imaging*, 340 F.3d at 1350. Because Kohl's does not appear to make any explicit arguments that an assertion of personal jurisdiction is unreasonable or unfair and because there do not appear to be any arguments that an assertion of personal jurisdiction is unreasonable or unfair—let alone being one of those "rare" situations—the Court determines that Kohl's is subject to specific jurisdiction in this forum. *Beverly Hills Fan*, 21 F.3d at 1568.

Slyce also contends that Kohl's is subject to jurisdiction under the stream of commerce theory. *See, e.g.*, ECF No. 13 at 10–11. In particular, Slyce contends that Kohl's itself is an established distribution channel in Texas because it has a "substantial number of stores nationwide and in this forum, and it also has an interactive website available to residents in this forum that supplements its physical store locations along with substantial online fulfillment and distribution centers here. Its mobile app is also accessible to users in this forum and can be specifically configured to shop its physical locations in this forum and to have products delivered to this forum." *Id.* at 11. Kohl's responds by arguing that 1) *Bristol-Myers Squibb* invalidated the stream of commerce theory and 2) "even if a narrowed 'stream of commerce' theory survived *Bristol-Myers Squibb*," the distribution channels are not located in Texas. ECF No. 14 at 4–5.

The Court agrees with Slyce and finds that Kohl's is subject to jurisdiction in this forum under the stream of commerce theory.

Furthermore, Kohl's arguments are unavailing. First, contrary to what Kohl's strongly implies,[1] the stream of commerce theory is still a valid basis for personal jurisdiction. In fact, as Slyce correctly stated, "*Bristol-Myers Squibb* does not even mention the stream of commerce theory, let alone invalidate it." ECF No. 16 at 3; *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). At least one other Texas court, analyzing this same issue, arrived at the exact same conclusion. *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-CV-00194-JRG, 2019 WL 2774362, at *2–3 (E.D. Tex. July 2, 2019) ("The Court finds nothing in the Supreme Court's opinion to indicate a shift in the Supreme Court's stream of commerce jurisprudence. Neither the Supreme Court's majority opinion nor Justice Sotomayor's dissent even mention the stream of commerce theory. The Supreme Court does not purport to alter its overall jurisprudence regarding specific jurisdiction, noting instead that the Supreme Court's 'settled principles regarding specific jurisdiction control this case' . . . Absent a clear statement to the contrary from the Supreme Court or the Federal Circuit, this Court will continue to apply the existing stream of commerce jurisprudence."). Circuit Courts have also continued to analyze personal jurisdiction under this theory. *See, e.g.*, *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018); *In re DePuy Orthopaedics, Inc.*, *Pinnacle Hip Implant Prod. Litig.*, 888 F.3d 753, 778–81 (5th Cir. 2018); *see also Shuker v. Smith & Nephew*, PLC, 885 F.3d 760, 780 (3d Cir. 2018) (approving of Justice O'Connor's purposeful availment stream of commerce theory).

---

[1] Kohl's makes the following statements: "There is no third 'stream of commerce' basis for personal jurisdiction." ECF No. 14 at 5. "Even if a narrowed 'stream of commerce' type of specific jurisdiction survived *Bristol-Myers Squib*…" *Id.* "Thus, even if the stream of commerce theory is valid…" *Id.* at 6. Kohl's repeated strongly implied statements that the "stream of commerce" theory is not valid are not helpful to the Court.

Second, Kohl's contends that there is no basis for jurisdiction under the stream of commerce theory because Apple iTunes and Google Play—and not Kohl's website—distributes the mobile app.  ECF No. 14 at 3.  Slyce contends that Kohl's argument is mere "sleight of hand" because while the mobile app "may be hosted on Google or Apple servers outside of Texas, that application is available to residents here (and is specifically configured to serve residents here) because of Kohl's efforts to serve this forum.  ECF No. 16 at 4.  And residents in this forum use the mobile application (in conjunction with the other parts Kohl's omnichannel sales strategy), because of Kohl's substantial presence in this forum and its substantial activities directed at this forum."  *Id.* (citations omitted).

The Court does not find Kohl's argument to be persuasive.  Using Apple iTunes and Google Play servers to distribute the mobile app appears to be the electronic equivalent of using the United States Postal Service or FedEx to deliver packages from a USPS or FedEx distribution center to a customer.  Courts have found that a defendant is subject to personal jurisdiction in a particular forum even if the defendant shipped its products to the forum via an intermediary.  *See, e.g.*, *Beverly Hills Fan*, 21 F.3d at 1563.  Furthermore, the relevant inquiry is not whether Kohl's uses or controls the intermediaries in the distribution chain, but instead whether it delivered its product into the stream of commerce.  *Id.* at 1566; *FOX Factory, Inc. v. SRAM, LLC*, No. 3:16-cv-00506, at *5 (N.D. Cal. Oct. 111, 2017) (finding that defendant was subject to personal jurisdiction in that forum where defendant shipped through two intermediaries).  Finally, the Court is reluctant to hinge its personal jurisdiction decisions on the physical locations of Apple iTunes and Google Play servers when those servers distribute apps not just nationwide, but worldwide.

Therefore, for the reasons described in this section, the Court finds that Slyce has made at least a *prima facie* showing that Kohl's is subject to personal jurisdiction in this forum on the basis of both specific jurisdiction and the stream of commerce theory.

### 2.    Syte is subject to personal jurisdiction in this forum

Slyce contends that personal jurisdiction is proper for Syte based only on the stream of commerce theory.  ECF No. 13 at 12.[2]  In particular, Slyce that contends that "[s]elling products to a nationwide retailer 'is a strong indication that [the defendant] intends to direct its products nationwide.'"  ECF No. 13 at 12 (citing *ATEN Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 119 (E.D. Tex. June 25, 2009)).  More specifically, Slyce contends that "Syte specifically markets its technology to . . . national retailers like Kohl's.  And given its connection to Kohl's, it is inconceivable that (1) Syte was unaware that Kohl's was a nationwide retail chain with locations across the United States, including Texas, and (2) that Kohl's customers (like others in Austin mentioned on Syte's website) would use the software here as well."  ECF No. 16 at 4 (citations omitted).

Syte contends that the stream of commerce theory does not apply to it because it "contracted with Kohl's, a Wisconsin company, which in turn distributed the mobile app nationally through third party servers."  ECF No. 14 at 7.  Syte also contends that Slyce's citation of *ATEN Int'l* is distinguishable because it is a pre-*Bristol-Myers Squibb* case and because the mobile app is not downloaded from retail stores in Texas.  *Id.*

Although it is a very close call, based on the pleadings, briefs, declarations, and exhibits, the Court finds that Syte is also subject to personal jurisdiction in this forum under the stream of

---

[2] In its original complaint, Slyce alleged that Syte was subject to personal jurisdiction in Texas under Fed. R. Civ. P. 4(k)(2)(B).  ECF No. 1 at ¶ 12.  In its opening motion, Syte contended that Rule 4(k)(2)(B) was inapplicable because it was subject to personal jurisdiction in Wisconsin "for contracting to provide the accused technology to Kohl's." ECF No. 14 at 7.  In its response and sur-reply, Slyce did not assert that Syte was subject to jurisdiction under Rule 4(k)(2)(B).  ECF No. 13 at 12; ECF No. 16 at 4–5.

commerce theory.  More specifically, Syte delivered its software into the stream of commerce by contracting with Kohl's.  It appears uncontested that Kohl's app with Syte's software was downloaded by Texas consumers.  ECF No. 14 at 7.  Therefore, there is at least *prima facie* evidence that there is a distribution channel from Syte to Texas (via Kohl's).  Kohl's is one of the largest retailers in the country.  Texas is one of the largest states in the country and also has the second largest number of Kohl's stores.  ECF No. 13 at 4.  Kohl's largest online fulfillment center in the country is in Texas.  *Id.* at 1.  Therefore, there is at least *prima facie* evidence that Syte knew, or should have known, that its products would end up in Texas.  Based on the foregoing, because Syte placed its software into the stream of commerce and it was at least foreseeable—if not known—that its goods would end up in Texas, personal jurisdiction is proper at least under Justice Brennan's articulation of the stream of commerce theory.  *Asahi*, 480 U.S. at 117.

The only question remaining is whether personal jurisdiction is proper under Justice O'Connor's articulation which requires "an action of the defendant purposefully directed toward [Texas]."  *Id.* at 112.  Syte contends that it did not undertake any purposeful action directed towards Texas.  ECF No. 14 at 7.  Slyce contends that a "purposeful entry into the Texas stream of commerce is established by showing that the defendant's products were sold into a nationwide distribution network and that the products were available in Texas."  ECF No. 13 at 12.

In the "typical" case, the defendant continuously sells its physical products, *e.g.*, computer products, to a nationwide retailer (or an intermediary), who in turn sells them to consumers.  *See, e.g.*, *ATEN Int'l.*, 261, F.R.D. at 119.  In the "typical" case, the defendant may be ship hundreds or thousands or more products to the nationwide retailer.  As such, personal jurisdiction under either stream of commerce theory is proper given that the defendant, at

minimum, should have known that by placing hundreds or thousands of products into the stream of commerce that some of them would make their way into the forum state and be purchased by customers there. *Beverly Hills Fan*, 21 F.3d at 1566 ("[W]e find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing . . . defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."). And by continuously placing products into the stream of commerce (that eventually made their way to the forum state), the defendant took purposeful actions directed toward the forum state.

The facts of this case are different. Syte sold (or licensed) a copy of its software to Kohl's (almost assuredly in electronic format), who bundled that software into its app, and then distributed them to consumers (through Apple iTunes or Google Play). More specifically, Syte did not sell hundreds or thousands of physical products to Kohl's, but rather sold perhaps just a single electronic copy of its software to Kohl's, who in turn replicated it hundreds or thousands of times and distributed those copies to customers.

At least two other courts have analyzed whether personal jurisdiction is proper under similar facts.[3] In *Applied Capital, Inc. v. ADT Corporation*, defendant IControl Networks, Inc. sold its software to co-defendant ADT, which incorporated that software into its Pulse product and then sold that product in the forum state. No. 1:16-cv-00815-WJ-SC, 2017 WL 3600726, at *1 (D. N.M. Feb. 6, 2017). The court found that personal jurisdiction in New Mexico under the stream of commerce theory was proper. *Id.* at *8. The court explained that "[a]s explained by

---

[3] The Court found other software cases, but in those cases, it appears that physical copies of the software were distributed and sold by the defendant, whereas in this case, Syte appears to only have sold as few as a single electronic copy to Kohl's.

the Federal Circuit, a required element of the foreseeability standard is that the accused infringer knew its product was being sold or marketed in the forum state." *Id.*

In *Motorola, Inc. v. PC-Tel, Inc.*, one of the defendants in that case, AltoCom, developed software which it licensed to companies that manufacture computers, fax machines, video telephones, personal digital assistants, and a variety of other communication devices. 58 F. Supp. 2d 349, 351–52 (D. Del. July 12, 1999). The court found that personal jurisdiction in Delaware was proper under the stream of commerce theory because "by contracting with entities that have a market presence both nationally and world-wide, AltoCom can hardly be heard to complain that it did not know the likely destination of some of its products would include this forum. Indeed, the company, acting in concert with its licensees, sells its products expressly for integration into end user products with full knowledge that these goods will then be placed into established distribution channels that service the State of Delaware." *Id.* at 355, 357. Although not explicitly relied upon, there were other unique facts in this case. For example, AltoCom received royalties from its licensees "based on each port that is enabled in the licensee's or sublicensee's 'Shipped End User Product.'" *Id.* at 355. As a second example, AltoCom had a website which allowed end users to perform functions with the software and end users could call for customer support. *Id.* at 352. In other words, AltoCom encouraged contact and interacted with end product users in the forum state.

Based on these two cases, there does not appear much difference in the analysis of non-physical software cases (with an intermediary) and the "typical" case. Therefore, although it is a very close call, based upon the reasoning that follows, the Court concludes that personal jurisdiction with respect to Syte is also proper under Justice O'Connor's stream of commerce theory. Syte specifically markets its software to "top" brands and national retailers. ECF No. 13

at 6–7.  Syte sold (or licensed) its software to Kohl's a nationwide retailer.  Syte knew or should have known that its software would be bundled into the Kohl's app.  Syte knew or should have known that Kohl's views its physical stores, website, and mobile app as an intertwined "omnichannel" sales strategy primarily because its software was designed to find similar products available at Kohl's stores or on Kohl's website.  Syte knew or should have known that Kohl's is one of the nation's largest retailers.  Syte knew or should have known that Kohl's has its second-largest number of stores in Texas and its largest distribution and online fulfillment center in the United States.  Syte knew or should have known that a Texas customer could not use its software alone to buy products, but rather its software needed to work in conjunction with Kohl's stores and/or website, and app.  Despite what Syte knew or should have known, there is no evidence in the record that Syte opted to limit the distribution of its software to exclude Texas or to change the functionality of its software to operate in a different (*e.g.*, non-infringing) way in Texas.  Although this is a very close call, the Court concludes that Slyce has made at least a *prima facie* showing of demonstrating that personal jurisdiction with respect to Syte is proper under the stream of commerce theory.  Because Syte does not appear to make any explicit arguments that an assertion of personal jurisdiction is unreasonable or unfair and because there do not appear to be any arguments that an assertion of personal jurisdiction is unreasonable or unfair—let alone being one of those "rare" situations—the Court determines that Syte is subject to specific jurisdiction in this forum.  *Beverly Hills Fan*, 21 F.3d at 1568.

That said, the record is silent with regard to several key facts, any of which could change the Court's conclusion that Syte's actions were "purposefully directed toward [Texas]."  *Beverly Hills Fan*, 21 F.3d at 1566 (citing *Asahi*, 480 U.S. at 112 (emphasis removed)).  First, and perhaps most importantly, the record is silent as to whether Syte received royalties for each app

that was downloaded, installed, or used.  If it did, because Texas consumers are likely one of the largest downloaders and users of Kohl's app—at least if number of physical stores is an indicator—Syte would receive significant royalties due to Texas consumers.  Second, the record is silent whether Syte had an input into Kohl's marketing to Texas customers.  (Conversely, the record is also silent regarding what actions Syte directed or allowed Kohl's to take towards Texas consumers.)  Third, the record is silent whether Syte provides technical support for the users of Kohl's app, directly or indirectly (though patches and version upgrades), and/or if it is aware if Texas consumers are experiencing technical difficulties.  Fourth, the record is silent as to whether Syte has continuously provided patches and version upgrades to Kohl's or whether, at the time the complaint was filed, Syte only provided a single software release to Kohl's.  To the extent that any of these facts—or other similar facts—are present, the Court invites Syte to file a motion for reconsideration.

### 3.    Slyce's request for jurisdictional discovery is moot

As stated above, because Slyce has made at least a *prima facie* showing of demonstrating that personal jurisdiction is proper with respect to Kohl's (for both specific jurisdiction and the stream of commerce theory) and Syte (stream of commerce theory only), Slyce has met its burden.  Kohl's and Syte argue that jurisdictional discovery is a fishing expedition.  ECF No. 14 at 8.  Accordingly, because jurisdictional discovery is unnecessary, the Court **DENIES** Slyce's request for jurisdictional discovery as moot.

### B.    Venue

Kohl's and Syte also contend that venue is not proper.  ECF No. 6 at 11–12, ECF No. 14 at 9.  In its opening motion, Kohl's and Syte contend that neither subsection of 28 U.S.C. § 1400 apply to either Kohl's or Syte.  ECF No. 6 at 11–12.  In particular, Kohl's contends that venue is

not proper because, at least according to Kohl's, venue "requires more than the minimum contacts necessary for establishing personal jurisdiction" and personal jurisdiction is not proper, at least according to Kohl's.  ECF No. 6 at 12; ECF No. 14 at 9.  Kohl's further contends that "Texas cannot be 'the place of the defendant' merely because a nationwide retailer has two stores here."  ECF No. 6 at 12.  Syte contends that venue is not proper because it does not have a "regular and established place of business" anywhere in Texas.  ECF No. 6 at 12.  Syte also contends that venue is not proper because Syte is not subject to personal jurisdiction in this District or elsewhere in Texas.  *Id.*; ECF No. 14 at 9.  Kohl's does not contest that acts of infringement may have occurred in this District.  ECF No. 6 at 12; ECF No. 14 at 9.

Slyce, by contrast, contends that venue is proper for both defendants, namely, it is proper under 28 U.S.C. § 1400(b) for Kohl's and 28 U.S.C. § 1391(c)(3) for Syte.  ECF No. 13 at 14–15.  With respect to Kohl's, Slyce argues that it has pled allegations of infringement by Kohl's in this District and that Kohl's has at least twenty regular and established places of business in this District.  ECF No. 13 at 15.  With respect to Syte, Slyce contends that as a foreign corporation, Syte may be sued in any judicial district.  *Id.* at 16.

The Court agrees with Slyce's arguments and finds that venue is proper for both Kohl's and Syte.  More specifically, with respect to Kohl's, because Slyce has properly pled (and Kohl's does not dispute) that acts of infringement occurred in this District and because Kohl's has several "regular and established places of business" in this District, venue is proper under 28 U.S.C. § 1400(b).  With respect to Syte, because Syte admits it is a foreign corporation (ECF No. 6 at 3), 28 U.S.C. § 1391(c)(3)—and not 28 U.S.C. § 1400—applies.  *In re HTC*, 889 F.3d at 1357.  And pursuant to 28 U.S.C. § 1391(c)(3), venue in proper in this District for a foreign corporation such as Syte.  *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456,

2018 WL 5315206, at *3 (E.D. Tex. Oct. 26, 2018) ("[Defendant] is a foreign corporation.  The fact that it may have its principal place of business in Houston, Texas does not alter its status as a foreign corporation for the purposes of § 1391(c)(3).  As such, venue as to [Defendant] is proper in this District.") (internal citations removed).

### C.      Failure to State a Claim

Defendants contend that at least claim 1 of the '624 Patent is directed to patent ineligible subject matter.  ECF No. 6 at 13.

Given the Circuit's holding and guidance in *MyMail, Ltd. v. ooVoo, LLC*, the Court denies Defendants' motion without prejudice and directs it to refile its motion, if it so chooses, after the issuance of the Court's claim construction order.  *See* No. 2018-1758, 2019 WL 3850614 (Fed. Cir. 2019).  Should Defendants elect to refile their motion at that time, the Court orders Defendants to brief the patent ineligibility of each asserted claim, *i.e.*, not just representative claims.  The Court will grant any reasonable request to extend the page limits for such a motion.

To be clear, the Court takes no position on whether claim construction is necessary for any of the asserted claims.  *See MyMail*, 2019 WL 3850614, at *5.  Furthermore, the Court takes no position on whether there are any factual disputes that preclude dismissal at the pleadings stage.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128–30 (Fed. Cir. 2018).

## IV.      Conclusion

For the reasons contained herein, the Court **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.

**SIGNED** this 22nd day of October, 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE