**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SLYCE ACQUISITION INC.,** | § | |
| *Plaintiff* | § | |
| | § | **W-19-CV-00257-ADA** |
| **v.** | § | |
| | § | |
| | § | |
| **SYTE – VISUAL CONCEPTION LTD.,** | § | |
| **KOHL'S CORPORATION,** | § | |
| *Defendants* | § | |

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

Before the Court is Defendants Syte – Visual Conception Ltd. ("Syte") and Kohl's Corporation's ("Kohl's") motion for reconsideration. ECF No. 24. Plaintiff Slyce Acquisition Inc. ("Slyce") filed its response on October 29, 2019. ECF No. 27. For the reasons described herein, the Court **DENIES** Defendants' Motion for Reconsideration.

**I.      Background**

Slyce filed the instant action on April 11, 2019 alleging infringement of U.S. Patent No. 9,152,624. The '624 Patent is entitled "Systems and Methods for Visual Presentation and Navigation of Content Using Data-Based Image Analysis." The '624 Patent recites a method and system that allows a user to upload an image of what he/she would like to search for. '624 Patent at Abstract. Then, in accordance with the invention covered by the '624 Patent, "certain attributes and categories of that image are analyzed and stored (such as color, shape, size, etc.); the uploaded image attributes and categories are compared to the attributes and categories of a number of stored images from the website; and once the comparison yields a positive match (or matches) based on certain criteria, the website images that match the uploaded image are displayed to the user. No text labels are necessary for the user, and the search results are based on the actual visual contents

1

of the images." ECF No. 13 at 3. Slyce alleges that Defendants each infringe at least claim 1 of the '624 Patent. *See, e.g.*, ECF No. 1 at ¶¶ 28–29.

Defendant Kohl's is a Wisconsin corporation with its principal place of business in Menomonee Falls, Wisconsin. ECF No. 6 at 1. Kohl's is a nationwide retailer with multiple physical stores in this district. *Id.*; ECF No. 13 at 15. Kohl's also sells products through its website and its mobile app. ECF No. 6 at 1. Syte is an Israeli corporation with principal place of business in Tel Aviv. *Id.* Neither party appears to contend that Syte has a regular and established place of business within this district. *Id.*; ECF No. 13 at 16–17.

Slyce alleges that Kohl's, through the "Scan & Shop" tool in its mobile app, directly infringes at least claim 1. ECF No. 1 at ¶ 28. Slyce alleges that Syte knowingly induced Kohl's to directly infringe at least claim 1 by "selling, offering for sale, providing, maintaining, and/or licensing its visual search navigation software with the intent that Kohl's utilize that software to implement the 'Scan & Shop' tool of the Kohl's mobile app in the United States." *Id.* at ¶ 29.

On October 22, 2019 the Court entered an order denying Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6). ECF No. 23. In the Order, the Court concluded that Slyce made at least a *prima facie* showing of demonstrating that Syte is subject to personal jurisdiction in this forum under the stream of commerce theory. *Id.* at 17. The Court found personal jurisdiction to be proper under Justice Brennan's articulation of the stream of commerce theory, and, "[a]lthough it [was] a very close call," the Court determined personal jurisdiction to also be proper under Justice O'Connor's articulation. *Id.* at 13–18. The Court noted that the record was silent with regard to key facts which could change its conclusion that Syte's actions were purposefully directed towards Texas. *Id.* at 17–18. Accordingly, the Court invited Syte to file a motion for reconsideration to address whether these facts are present in the case at hand. *Id.* at 18.

2

## II.    Legal Standard

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

## III.   Legal Analysis

### a.   Personal Jurisdiction

In their motion for reconsideration, Defendants contend Syte "has not directed its litigation-related activities to Texas, and therefore, personal jurisdiction over Syte in this district is improper." ECF. No. 24 at 1.  Defendants attach to their motion a confidential Declaration of Ofer Fryman In Support of Defendants' Motion for Reconsideration.  ECF No. 24, Ex. A.  Mr. Fryman, co-founder and Chief Executive Officer of Syte, declares the following relevant information: Syte receives ████████████████ from Kohl's for use of the visual search technology, and is ██ ███████████████████████████████ ; Syte has provided █████████████████████ ████████ ; Syte provides ████████████████████ , and has █████████████████████ ████████████████ ; Syte provides ████████████████████████████ for visual search; and Syte has not provided ████████████████████████

████████████████████████████████████████. *Id.* at ¶¶ 1–6.  Based on the confidential declaration of Mr. Fryman, Syte requests that the Court reconsider its finding of personal jurisdiction and dismiss the complaint as to Syte.  ECF No. 24 at 3.

In its response, Slyce contends it has made a *prima facie* showing of jurisdiction.  ECF No. 27 at 3.  Slyce points to its assertions in its original briefing, in which Slyce raised the issue of Syte's direct contacts with Texas-based retailers and supported its assertions with a sworn declaration from Ted Mann, Chief Executive Officer of Slyce.  *Id.* at 2.

Slyce further notes that the Fryman Declaration "does not confirm one way or the other" whether Syte's activities are directed at the Texas market, and is silent with regard to "the other factual issues raised by Slyce in its opposition that could potentially resolve the question of jurisdiction."  *Id.* at 3.  Lastly, Slyce claims that "[g]iven the number of open issues that remain regarding jurisdiction, Syte's motion for reconsideration is substantially premature."  *Id.* The Court, however, invited Defendants' motion for reconsideration.

The Court re-emphasizes that this case presents a different scenario than a "typical" case where a defendant continuously sells its physical products to a nationwide retailer (or an intermediary), who in turn sells those products to consumers.  *See, e.g.*, *ATEN Int'l Co. v. Emine Tech., Ltd.*, 261 F.R.D. 112, 119 (E.D. Tex. June 25, 2009).  By contrast, in the present case, rather than distributing thousands of copies of software on a physical medium, Syte provides Kohl's with a ████████████████████████████████ for visual search technology in exchange for a ████████████████.  ECF No. 24, Ex. A at 2.  As explained by the National Institute of Standards and Technology ("NIST"), ████████████████████████████████████████

████████████

████████████████████████████████████████████████████████████



In this case, Syte's applications run ▮▮▮▮▮▮▮▮▮▮▮▮, the client device is a customer's smartphone which runs the Kohl's mobile app, and the program interface is software within the Kohl's mobile app.

Syte contends that its visual search technology ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But these statements appear to be limited to Syte's ▮▮▮▮▮ visual search technology, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and not necessarily that there is no Syte-provided software within the Kohl's app. By contrast, the Court concludes that because Syte provides its visual search technology according to ▮▮▮▮▮▮, it almost certainly means that the Kohl's mobile app incorporates some Syte-provided software in order to interface with and access Syte's ▮▮▮▮▮ visual search technology. This software interface allows the user of a the Kohl's mobile app to take a picture of an item, have that picture ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and then receive pictures and descriptions of items in Kohl's inventory that are "visually similar or exact matches" to the item in the user's image.[1]  ECF No. 13, Ex. C at 25.  Without the Kohl's mobile app incorporating the

---

[1] To enable this functionality, the software interface may insert information into data transmitted by the Kohl's mobile app, *e.g.*, information that indicates to the Kohl's server that the picture of the item and other associated data needs to

Syte-provided software interface, the user would be unable to access Syte's ███████ visual search technology.

Further bolstering the Court's conclusion is that Slyce has alleged that Syte provides at least the software interface for the Kohl's app, an allegation that Syte has not directly contradicted or denied. ECF No. 1 at ¶¶ 24–30. Accordingly, because Slyce and Syte are referring to what appears to be two different pieces of software, there is no factual conflict present. Even if there were a contradiction, for a motion-to-dismiss, factual conflicts are resolved in the non-movant's favor. *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.") (quoting *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)) (internal quotation marks omitted).

In sum, the Court finds that Syte-provided software is incorporated into Kohl's mobile app, and users directly interact with Syte's software which underpins the "Scan and Shop" feature of the Kohl's mobile app.

Based on this finding, the Court now reconsiders its decision to assert personal jurisdiction over Syte. *See* ECF No. 23 at 13–18. For the reasons stated in the order denying Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6), the Court finds personal jurisdiction remains proper at least under Justice Brennan's articulation of the stream of commerce theory. ECF No. 23 at 13–14; *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 117 (1987). The only question is whether personal jurisdiction is proper under Justice O'Connor's articulation

---

be ███████████████████████████████. The software interface may also insert user-related information so that ███████████████ know which user that request is so that the matching items can be sent to that user.

which requires "an action of the defendant purposefully directed toward [Texas]." *Asahi*, 480 U.S. at 112.  As explained by Justice O'Connor:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.*

Based on the following facts, the Court finds that jurisdiction also remains proper under Justice O'Connor's articulation of the stream of commerce theory: Syte provided the software interface necessary for the consumer to access Syte's ██████ visual search technology.  That software is incorporated into the Kohl's mobile app, a consumer app used by residents of Texas. Syte knew or should have known that Kohl's has its second-largest number of stores in Texas. Syte knew or should have known that a significant number of Kohl's mobile app users, who directly access and use Syte's visual search technology to shop, are residents of Texas. Accordingly, by placing its software into the stream of commerce with this additional conduct, Syte has performed an action purposefully directed at Texas.  Therefore, personal jurisdiction is proper under Justice O'Connor's articulation of the stream of commerce theory. *Asahi*, 480 U.S. at 112.

Therefore, the Court **DENIES** Defendants' motion for reconsideration with respect to personal jurisdiction.

### b.  Failure to State a Claim

Defendants next ask the Court to reconsider its decision to refrain from ruling on patent invalidity at the pleadings stage.  Defendants argue that a determination of patent eligibility under 35 U.S.C. § 101 is appropriate at the motion to dismiss stage, prior to claim construction, in this case.  *See* ECF No. 24 at 4.  The Court **DENIES** this part of Defendants' motion because, as explained below, resolving a patent's § 101 eligibility is rarely appropriate as a Rule 12(b) motion to dismiss.

### i.  Applicable law

Courts apply a two-part test to determine whether a patent is directed to eligible subject-matter.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014).  First, a court must determine whether the claims at issue are "directed to a patent-ineligible concept."  *Id.* at 217.  Laws of nature, natural phenomena, and abstract ideas are not patentable.  *Id.* at 216.  If the claims are directed to a patent-ineligible concept, a court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 78–79 (2012)).  Step two of the analysis is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (brackets omitted).  Step two is satisfied "when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018).

8

### ii. Presumption of validity

The presumption of validity complicates a court's § 101 eligibility analysis for a Rule 12(b) motion to dismiss. More specifically, patents granted by the United States Patent and Trademark Office are presumptively valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011) (citing 35 U.S.C. § 282). "This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft*, 564 U.S. at 95–96). Accordingly, the presumption of validity extends to patent eligible subject-matter. *Id.* ("To the extent the district court . . . [concluded] that issued patents are presumed *valid* but not presumed *patent eligible*, it was wrong to do so.") (emphasis in original). Generally, overcoming the presumption of validity in a district court requires clear and convincing evidence.[2] *Microsoft*, 564 U.S. at 95. In the context of § 101 eligibility, the Federal Circuit has held that the second part of *Alice*'s two-step inquiry should be assessed according to the clear and convincing evidence standard. *Berkheimer*, 881 F.3d at 1368 ("Any fact, such as [whether a claim element or combination is well-understood or routine], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").

When analyzing a Rule 12(b) motion to dismiss, a court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the [patentee's] favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *M-I Drilling Fluids*, 890 F.3d at 999 ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in

---

[2] The Court notes that clear and convincing evidence is a high bar and the same heightened standard required to terminate a parent-child relationship. *Santosky v. Kramer*, 455 U.S. 745, 769–70 (1982) (holding that before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence).

the plaintiff's favor.").  Therefore, during step two of the *Alice* analysis, after accepting all of the complaint's factual allegations as true and drawing all reasonable inferences in the patentee's favor, a court must determine whether there is clear and convincing evidence that the claim limitations are merely "well-understood, routine, [and] conventional activities previously known to the industry."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  In other words, to prevail on a Rule 12(b) motion to dismiss, the movant needs to overcome both a factual deck stacked against it <u>and</u> a heightened burden of proof.  In some cases, these dual obstacles may be insurmountable, *e.g.*, if the patentee simply included a declaration from the inventor or expert explaining how the asserted claims are more than well-understood, routine, [and] conventional activities previously known to the industry as the district court must accept all of the complaint's factual allegations as true.

Therefore, because a patent is presumed valid and requires clear and convincing evidence to prove its invalidity, a Rule 12(b) motion to dismiss is a procedurally awkward place for a court resolve a patent's § 101 eligibility.

### iii.  Claim construction

Another factor that can affect a Court's § 101 analysis is claim construction.  *See, e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019).  The Court recognizes that "claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  The Federal Circuit, however, has instructed that "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter."  *MyMail*, 934 F.3d at 1379 (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction

disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."); *see Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015)).  Further, courts generally understand that claim construction can itself affect a § 101 analysis. *See, e.g., Aatrix Software,* 882 F.3d at 1128–30 (vacating the district court's Rule 12(b)(6) dismissal and ordering the district court to "resolve, as necessary, claim construction issues" on remand); *Kroy IP Holdings, LLC v. Groupon, Inc.*, No. 17-1405-MN-SRF, 2018 WL 4905595, at *16 (D. Del. Oct. 9, 2018) ("In the case at bar, questions of fact remain as to whether the asserted claims of the '660 patent were conventional at the time of the patent, and unresolved issues of claim construction could potentially bear on the analysis."); *Dynamic Applet Techs., LLC v. Mattress Firm, Inc.*, No. 4:17-CV-860-ALM-KPJ, 2018 WL 5306647, at *6–7 (E.D. Tex. Aug. 29, 2018), *report and recommendation adopted*, No. 4:17-CV-860-ALM-KPJ, 2018 WL 4456820 (E.D. Tex. Sept. 18, 2018) ("In order for the Court to determine whether the patents contain an inventive concept, it is necessary for there to be a settled interpretation of the claim language. Claim construction is therefore a necessity before the Court can further evaluate patent-eligibility under § 101."); *Tatcha, LLC v. Landmark Tech. LLC*, No. 16-CV-048321-WHO, 2017 WL 951019, at *6 (N.D. Cal. Mar. 10, 2017) ("Here, I find that the determination of whether the '319 Patent is valid under Section 101 would benefit from claim construction and a fuller factual record.") (citations omitted).  The need for claim construction may increase significantly if the patentee asserted multiple dependent claims.

Therefore, because claim construction can affect—and perhaps, in most cases, will affect—a court's § 101 eligibility analysis, the Court believes that it is generally wiser—and more

efficient—to wait to determine a patent's § 101 eligibility until <u>after</u> issuing its claim construction order.[3]

### iv.  Fact discovery

Insufficient discovery is another factor that can affect a court's analysis because "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018).  Thus, like claim construction, fact discovery can also affect a § 101 analysis.  *See, e.g.*, *Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015) (denying without prejudice motion for judgment on the pleadings of ineligibility of claims generally disclosing methods and systems for remote ordering of products. Held that there may be a set of facts that could result in eligibility of at least some claims.).[4]

The lack of fact discovery could be particularly problematic for dependent claims. Each dependent claim adds an additional limitation which is not present in the independent claim such that each additional limitation may provide the inventive concept that is otherwise lacking in the independent claim.  *See, e.g.*, *SAP Am., Inc. v. Investpic, LLC*, 260 F.Supp.3d 705, 715 (N.D. Tex. 2017) ("But, the Court must still analyze them under the second portion of the Alice test to determine if additional limitations of the dependent claims could add an inventive concept so that they address patentable subject matter.").  As such, because a defendant must provide clear and convincing evidence that each of the asserted dependent claims does not provide an inventive

---

[3] The Court notes that because fact discovery does not open until after claim construction under the Court's Order Governing Proceedings for Patent cases, the cost for both parties of delaying the resolution of § 101 eligibility until after claim construction is relatively modest and limited to the cost of preparing the claim construction briefing and preparing for the *Markman* hearing.

[4] Many of the cases cited in the prior section regarding the need for claim construction also describe the need for fact discovery in order to resolve a patent's § 101 eligibility.

concept but rather merely performs something that is "well-understood, routine, and conventional activities previously known to the industry," the Court believes that this further magnifies the need for fact discovery. *Berkheimer*, 881 F.3d at 1367.

Therefore, because resolving § 101 eligibility of all asserted claims almost certainly requires fact discovery and because fact discovery does not begin until after claim construction under the Court's default Order Governing Proceedings, the Court believes it is wiser and more efficient to wait to determine a patent's § 101 eligibility until <u>after</u> fact discovery has opened.

### v.   The difficulty of applying *Alice* test favors delaying § 101 analysis

Finally, the last factor that favors delaying a court's § 101 analysis is that *Alice* is a difficult test to apply and yields inconsistent results.  This lack of predictability and consistency is widely known and extremely problematic.  As Judge Plager stated, "The law . . . renders it near impossible to know with any certainty whether the invention is or is not patent eligible."  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348–56 (Fed. Cir. 2018) (Plager, J., concurring-in-part and dissenting-in-part).  Former Chief Judge Michel echoed that thought when he testified before the Senate Judiciary Committee saying, "If I, as a judge with 22 years of experience deciding patent cases on the Federal Circuit's bench, cannot predict outcomes based on case law, how can we expect patent examiners, trial judges, inventors and investors to do so?"  *The State of Patent Eligibility in America: Part I: Hearing Before the Subcomm. on Intellectual Prop. of the S. Comm. on the Judiciary*, 113th Cong. 2 (2019) (testimony of Judge Paul R. Michel (Ret.)).  Former Chief Judge Michel went even further in his opinion about *Alice* stating, "I do not recall any other legal issue—in patent law or any other issue within the Federal Circuit's jurisdiction—that created such disharmony, disagreement, and inconsistency."  Brief of the Honorable Paul R. Michel (Ret.)

as Amicus Curiae In Support of Petitioners at 4, *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, --- U.S. --- (2019) (No. 19-430).

The problems inherent in the § 101 analysis particularly come into play when an abstract idea is involved. As Judge Linn explained in 2017:

> The narrow character of the law of nature and natural phenomenon exceptions is relatively self-evident, but the contours of the abstract idea exception are not easily defined. For that reason, the abstract idea exception is almost impossible to apply consistently and coherently. . . . The problem with [the *Alice*] test, however, is that it is indeterminate and often leads to arbitrary results. Moreover, if applied in a legal vacuum divorced from its genesis and treated differently from the other two exceptions, it can strike down claims covering meritorious inventions not because they attempt to appropriate a basic building block of scientific or technological work, but simply because they seemingly fail the Supreme Court's test.

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part).  As an example of the uncertainty of applying the *Alice* test, one court equated step one from Alice with Justice Stewart's "I know it when I see it" test for obscenity.  *McRo, Inc. v. Sony Computer Ent. Am., LLC*, 55 F. Supp. 3d 1214, 1220 (C.D. Cal. 2014), *rev'd and remanded*, 837 F.3d 1299 (Fed. Cir. 2016) (quoting *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964)).  Unsurprisingly, given this lack of guidance, courts have struggled to determine what qualifies as an abstract idea.

As was the case for this motion, movants frequently resort to analogies to demonstrate that the patent is directed to an abstract idea.  ECF No. 6 at 15 (analogizing the patent-in-suit to a shop clerk that undertakes looking for pants having the same color, style, *etc.*).  As a general matter, the Court finds that analogies are often unhelpful because they abstract away important technical details that could impact the court's eligibility decision and/or are contrived, reverse-engineered analogies rather than actual "certain methods of organizing human activity."  *Alice*, 573 U.S. at 220.

14

Even small technical details could loom large because there is, perhaps in many cases, only a very thin line between a patent that is directed at an abstract idea and a patent that is directed to improving, for example, a computer.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).  Because courts generally do not have sufficient technical expertise to be a POSITA[5] or to appreciate the importance of particular technical details, in this Court's view, courts can either appoint technical experts to assist the court with a Rule 12(b) motion to dismiss based on § 101 eligibility or delay the determination of § 101 eligibility.  By delaying the § 101 determination, a court can spend more time with the patents during claim construction, motions to strike contentions, discovery disputes, and even motions for summary judgment.  Of these two approaches, this Court prefers the latter.  Even under the former, the Court will still face, as described above, the obstacles of overcoming the presumption of validity with clear and convincing evidence, the need for claim construction, and the lack of fact discovery when attempting to determine patent-eligibility.  This Court believes that a court stands a better chance of making the correct § 101 eligibility decision by delaying that decision in order to spend more time understanding the patents and its nuances, as well as technology in general, and what was "well-understood, routine, and conventional activities previously known to the industry."  *Berkheimer*, 881 F.3d at 1367; *see also Amando v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008) ("[District courts] are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them.").

---

[5] More generally, the Court believes that consciously evaluating a patent's § 101 eligibility from the viewpoint of a POSITA provides an important guardrail from ignoring potentially important technical details when applying both *Alice* steps.

### vi.   Summary and application

To summarize, because an issued patent enjoys the presumption of validity which requires clear and convincing evidence to prove otherwise, because claim construction and fact discovery can completely change the Court's § 101 analysis, and because the Court gains a greater understanding of the patents and the technology by delaying the resolution of eligibility, the Court believes that delaying the determination of a patents § 101 eligibility is the wisest course of action.

Based on the Court's review of the original briefing and the reconsideration briefing, the Court does not believe that the §101 eligibility of the patent-in-suit is one of those cases that can be accurately resolved pursuant to a Rule 12(b) motion to dismiss.  Therefore, the Court **DENIES** Defendants' motion for reconsideration.

But, to be clear, the Court takes no position on whether claim construction is necessary for any of the asserted claims.  Furthermore, the Court takes no position on whether there are any factual disputes that preclude dismissal at the pleadings stage.

As stated in the Court's Order Denying Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6), Defendants may refile their motion to dismiss, if they so choose, after the issuance of the Court's claim construction order.  Should Defendants elect to refile their motion at that time, the Court orders Defendants to brief the patent ineligibility of each asserted claim, *i.e.*, not just representative claims.  The Court will grant any reasonable request to extend the page limits for such a motion.

### IV.   Conclusion

For the reasons contained herein, the Court **DENIES** Defendants' motion for reconsideration.

**SIGNED** this 10th day of January, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE